HENDERSHOT v. THE STATE OF OHIO.

*Criminal law — Intoxicating liquors — Evidence — Testimony of officers searching without warrant — Unlawful possession of whiskey charged — Evidence shows raisin-jack seized — Proof of alcoholic content, etc.*

1. In a criminal prosecution for having in one's possession certain intoxicating liquors in violation of the so-called Crabbe Act, evidence secured by police officers who searched the premises of the defendant without a search warrant and found liquor thereon is inadmissible.

2. In order to sustain a conviction of one charged with having in his possession intoxicating liquor in violation of statute, where the liquor found was not one of the specific intoxicating drinks named in the statute, the evidence must show that it contained at least one-half of one per cent. of alcohol and that it was fit for beverage purposes.

(Decided March 19, 1921.)

ERROR: Court of Appeals for Cuyahoga county.

*Mr. Frank F. Gentsch,* for plaintiff in error.
*Mr. O. C. Bell,* for defendant in error.

VICKERY, J. This cause comes into this court on a petition in error to the criminal branch of the municipal court of the city of Cleveland, the purpose of which is to reverse a conviction had in the court below under the so-called Crabbe Act.

The record shows that an affidavit was filed charging the defendant. Frank Hendershot, with having in his possession certain intoxicating liquors. to-wit, whiskey, at 8014 Wade Park avenue, and upon the trial of said action he was found guilty. and fined the sum of $1,000, of which $500 was immediately remitted.

It seems that defendant below was carrying on a soft drink place at the location above referred to, and two officers came in there on the 27th of December of last year and searched his place without a search warrant, and they found in rooms adjoining, or in the basement, a bottle containing liquor, and, in the washroom, a small bottle containing some liquor. Objection was made to the introduction of the testimony, for the reason that it was procured without the necessary search warrant, whereupon the court overruled the objection and made use of the following language:

"I don't care whether he had a search warrant at all, if he had the evidence. Of course, there might be ground for civil action."

Whereupon the lawyer for the defendant said:

"That matter was taken up and discussed, in an exhaustive opinion by Judge Sater."

Whereupon the court said:

"The United States District Court, yes. I wonder who the man was he wanted to favor? What difference does it make, as a matter of justice, if a man gets evidence, whether he has a search warrant or not? If I am wrong, you have the safety of your record."

Later the lawyer for the defendant said:

"This man, nor anybody else, (referring to the officer) has the right to come into my house and search it without a search warrant."

The court then said:

"I admit that. I will say to you, if he gets evidence, this court will entertain that evidence until the court of appeals says I am wrong, and when the

court of appeals says I am wrong, I will then change. I think I am right."

This colloquy between the lawyer and the court seems to make it necessary for the court of appeals to make a ruling upon this proposition, so that the court below will know how to govern itself.

The United States supreme court, in a decision announced on February 28, 1921, held that it does make a difference whether a man has a search warrant or not, as to whether the evidence can be used. From the case of *Gouled* v. *United States,* 255 U. S., 298, 303, Justice Clarke quotes the Fourth Amendment to the United States Constitution, which is as follows:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue, but upon probable cause supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

Quoting again, from the Fifth Amendment, he says:

"No person * * * shall be compelled in any criminal case to be a witness against himself."

Justice Clarke then cites, supporting this doctrine, *Boyd* v. *United States,* 116 U. S., 616; *Weeks* v. *United States,* 232 U. S., 383, and *Silverthorne Lumber Co.* v. *United States,* 251 U. S., 385, and says:

"It would not be possible to add to the emphasis with which the framers of our Constitution and this court [citing cases above] have declared the im-

portance to political liberty and to the welfare of our country of the due observance of the rights guaranteed under the Constitution by these two Amendments. The effect of the decisions cited is: that such rights are declared to be indispensable to the 'full enjoyment of personal security, personal liberty and private property.'"

The court proceeds, discussing questions which would arise under these constitutional provisions and the cases decided thereunder, and then puts this query, at page 305:

"Is the taking or abstraction, without force, by a representative of any branch or subdivision of the Government of the United States, of a paper writing of evidential value only belonging to one suspected of crime and from the house or office of such person, — a violation of the 4th Amendment?"

The court then holds that evidence obtained under such circumstances is not admissible.

The same question was up in the case of *Silverthorne Lumber Co.* v. *United States, supra,* where, by the search of an office, papers were obtained which were held by the United States supreme court not to be admissible in evidence when obtained in such manner.

The second proposition of the syllabus in that case is:

"The rights of a corporation against unlawful search and seizure are to be protected even if it be not protected by the Fifth Amendment from compulsory production of incriminating documents."

Now it would seem that these authorities — another of which is *Amos* v. *United States,* 255 U.

S., 313, decided on February 28, 1921, in error to the district court of the United States for the eastern district of South Carolina — are all to the effect that it does make a difference how the evidence was obtained, and that a man has the right to be immune from an unwarranted search, or, if the search is under a defective warrant, that the evidence thus obtained cannot be used in a court against him.

We would not notice this in this case if it were not for the statement of the court below that he was going to hold in that way until the court of appeals held otherwise, because the record nowhere shows that a motion was made or proper proceedings taken to get this property from the officers' possession. In order to avail one's self of this right to object to the use of the testimony thus obtained, when no writ was issued, or a defective writ was issued, it seems to be necessary that a petition for the return of the property, sworn to by the defendant, should be filed at some time before the final adjudication of the case, or before the evidence is sought to be introduced, and this was not done in the case at bar, or at least the record does not show that it was done, and the defendant below might be deemed to have waived this right. (*Amos* v. *United States, supra.*) I say, were it not for above fact, we might have overlooked this question entirely and have reversed this case, as we shall, upon another ground.

The affidavit in this case charged the defendant with having in his possession intoxicating liquor,

to-wit, whiskey, but nowhere in the evidence does it show that any whiskey was taken. We have recently held in the case of *Woody et al.* v. *State, ante,* 342, that an affidavit which charged the defendant with having in his possession intoxicating liquor, to-wit, whiskey, alcohol, wine, beer, ale, porter and gin, is sufficient in charging an offense within the meaning of the Crabbe Act; but if an offense is stated in the affidavit it is necessary in proof to prove the allegations of the affidavit, and nowhere in this record does it show that the defendant had whiskey in his possession. True they say that it was raisin-jack. That is a term that is not defined in the act itself, and surely not within the act which names specific intoxicating drinks the unlawful possession of which will constitute an offense. The record shows that this liquor, whatever it was, contained a large percentage of alcohol, but it nowhere shows that that alcohol was fit for beverage purposes, and we think that where the record does not show that it is one of the liquors above named, and so named in the act, it comes under the second division that we marked out in the *Woody case,* where the proof must show that it contained at least one-half of one per cent. of alcohol and that it was fit for beverage purposes. This liquid, according to the record, contained many times one-half of one per cent., but it is nowhere shown that it was fit for beverage purposes, and, so far as the record shows, it might have been denatured alcohol, or might have been any other thing containing that much alcohol but not fit for beverage purposes. We, therefore, think that

the court was wrong in his conclusions in this case, and the judgment, for that reason, will be reversed and the cause remanded for further proceedings according to law.

*Judgment reversed, and cause remanded.*

Washburn, P. J., and Ingersoll, J., concur.