Ingersoll, J.
Plaintiff in error was arrested upon a warrant charging him with the unlawful pos *192 session of intoxicating liquors in violation of the provisions of Section 6212-15, General Code. Trial was had before L. L. Marshall, a justice of the peace for Euclid township, Cuyahoga county, Ohio, on March 27,1922, wherein he was found guilty and sentence imposed. From this conviction and sentence which was affirmed by the common pleas court he prosecutes error to this court.
Upon trial in the lower court, no evidence whatever was introduced by the defendant, but, upon the close of the state’s case, defendant, after moving for his discharge, rested his case.
The testimony introduced by the state, as appears from an agreed statement of facts filed herein, discloses that on March 18 Carl Metta and James Naylor, both of whom were federal prohibition officers, together with R. E. DeSalm, a constable of Euclid township, by virtue of a search warrant addressed to the constable, made a search of the premises of plaintiff in error located at 4908 Detroit avenue, wherein they found four gallons of whiskey, which, witnesses Metta and Naylor testified after being properly qualified, was rye whiskey. It further appeared from the testimony of the witness Metta that the containers holding the liquor bore no revenue stamps, and that in his opinion' the rye whiskey was contraband liquor.
Prior to and during the trial of the cause no motion, application, or petition for the return of the property seized under the search warrant was made or filed, defendant simply making a formal objection to the introduction of the evidence without specifying the ground of his objection.
Upon argument of this case before this court but two questions were raised:
*193 1. Did the court err in permitting the introduction of the evidence seized under the search warrant?
2. Did the burden of proving that the possession of the liquors seized was lawful or unlawful rest upon the state or upon the defendant?
As to the first proposition, it is the law that no application having been made prior to the trial of the case for the return of the property seized the question cannot now be raised in this court, and it was not error for the court to permit its admission in the case.
This question has arisen and has been decided by the courts of appeals in six of the appellate districts of this state, each of them holding that if the defendant wishes to avail himself of his right to object to the introduction of the evidence seized under a search warrant he must make a seasonable application for the return of the property, in an independent proceeding, prior to the trial of the case in which such evidence is to be used.
This question was last before this court in the case of Cardova v. State, wherein Judge Sullivan, speaking for the court, and reviewing the decisions submitted upon this question, held that such procedure was required.
Prior to that, in the case of Hendershot v. State, 14 Ohio App., 430, at page 434, this court, through Judge Vickery, in an opinion dated March 19, 1921, spoke as follows:
“We would not notice this in this case if it were not for the statement of the court below that he was going to hold in that way until the court of appeals held otherwise, because the record nowhere shows that a motion was made or proper proceedings *194 taken to get this property from the officers’ possession. In order to avail one’s self of this right to object to the use of the testimony thus obtained, when no writ was issued, or a defective writ was issued, it seems to be necessary that a petition for the return of the property, sworn to by the defendant, should be filed at some time before the final adjudication of the case, or before the evidence is sought to be introduced, and this was not done in the case at bar, or at least the record does not show that it was done, and the defendant below might be deemed to have waived this right.”
In the present case, no such application or petition for the return of the property has ever been filed, and, relying upon the previous attitude of this court alone, the court is convinced that the first question above set forth should be answered in the negative.
In further support of this position the court calls attention to the case of Ankenbrandt v. State, decided by the court of appeals of Lucas county, on February 13,1922, wherein, in passing upon a somewhat similar question, the court said:
“No demand was made at any time upon the mayor for the return of the property in question. We have no difficulty in arriving at the conclusion that the demand for the return of goods alleged to have been illegally taken from the possession of the owner must be made upon the court, prior to the time of trial and not upon the individual officer in whose custody the property is. Manifestly this is true because the rightfulness of the demand is a question that must be tried before the court before whom the proceeding is pending.
“It is a question of fact which should be pre *195 sented to the court in advance of and separate and apart from the trial of the case itself, in order that the trial court may have the opportunity to pass upon the application, and either order the return of the property or refuse to order the return of the property, as the facts determine should be done, prior to the commencement of the trial itself.”
Another Ohio case that has been widely discussed upon this question, and frequently misunderstood and misinterpreted, is that of Kovacs v. State, decided by Judge Snediker of the Montgomery county court of common pleas, published in 24 N. P. (N. S.), 1, wherein the court says at page 14:
“Where evidence is offered, if it be otherwise competent and relevant, an objection to its reception on the ground that it has been secured by an unreasonable search and seizure will not be entertained by the court.” *
One of the latest eases dealing with this question, and one to which frequent reference is made, is that of Wiggins v. United States, 272 Fed. Rep., 41, wherein, at page 44, the court states that “It is established law that collateral inquiry in the mode in which evidence has been obtained will not be allowed, when the question is raised for the first time at the trial.” And that “A defendant who thinks himself wronged by a seizure of property belonging to him, which he expects will be used against him later as evidence on a criminal charge, is not without adequate remedy. He should apply to the court for the return of the property alleged to have been illegally seized, and the issue of the legality of the seizure can then be determined in accordance with law and in an orderly manner. ’ ’
We feel that the previous attitude of this court *196 is the correct one, and it should and will be followed in deciding this question in the present case.
Upon the second proposition, did the burden of proving that the possession of the liquors seized was lawful or unlawful rest upon the state or was it a matter of defense, we find, in view of the authorities hereinafter cited, that it was strictly a matter of defense, and that the burden of alleging or proving the same did not rest upon the state.
This is by far the most important question raised in this case, and because of this we are taking advantage of this occasion to set forth fully the general prohibitory provision of the Crabbe Act, as found in the first sentence of Section 6212-15, General Code, which reads:
“No person shall, after the passage of this act, manufacture, barter, transport, import, export, deliver, furnish, receive, give away, prescribe, possess, solicit or advertise any intoxicating liquors, except as authorized in this act.”
From the above section it is clear that it was the intention of the legislature to outlaw the liquor traffic except in certain instances wherein a privilege or a permit is granted. The only exceptions contained in the act are as follows: “Liquor, and liquor preparations and compounds for non-beverage purposes, and wine for sacramental purposes may be manufactured, purchased, sold, bartered, transported, imported, exported, delivered, furnished, received, given away, possessed, prescribed, solicited and advertised, but only in accordance with the provisions of title II of the act of congress known as the ‘National Prohibition Act,’ passed October 28, 1919,” and paragraph 2 of Section 2 of the same act, reading “The term *197 ‘given away’ and the term ‘possess’ shall not apply to intoxicating liquor in a bona fide private dwelling.”
It is clearly evident that if the defendant lawfully had possession of intoxicating liquor it must have been held under one of the preceding exceptions specified in the act. There is nothing contained in the evidence in this case that could by the wildest stretch of the imagination justify one in believing that the rye whiskey seized was possessed for non-beverage or sacramental purposes, and therefore if it was lawful it could be so only by virtue of being possessed in a bona fide private residence, as defined by the laws of Ohio.
There are two provisions of the General Code which go toward defining what premises may be regarded as a bona fide private residence. The first is contained in Section 4 of the Crabbe Act (Section 6212-16, General Code) and reads:
“No search warrant shall issue to search any private dwelling occupied as such unless it is being used for the unlawful sale of intoxicating liquor, or unless it is in part used for some business purpose such as store, shop, saloon, restaurant, hotel or boarding house. ’ ’
The above provision was, in Ohio, for approximately one year, the only definition of a bona fide private residence. It soon became apparent that such definition was defective in that it took from premises their right to be considered a bona fide private residence only when liquor was being sold thereon. The authorities were powerless to enforce the provisions of the law making possessing, manufacturing, etc., equally a violation of the law, because of the strictness of the definition above set *198 forth. After one year’s efforts resulting in a failure to make any substantial headway in enforcing the law against the liquor traffic, the legislature saw fit, in the exercise of its prerogatives, to further and more correctly define, for the enforcement of the prohibition laws, a bona fide private residence, and in the emergency clause of the Miller Bill (Sections 6212-21 to 6212-39, General Code) is found ample evidence of the above contention, wherein it says:
“This act is hereby declared to be an emergency act, necessary for the immediate preservation of the public peace and safety. Such necessity exists because of the reason that flagrant violations of the law prohibiting the liquor traffic prevail in some parts of the state which is encouraging the commission of other crimes, all resulting in the loss of life and property to many citizens. ’ ’
In paragraph 3, Section 7, of the Miller Bill (Section 6212-27, General Code), it is stated that “no place shall be regarded as a bona fide private residence under the laws prohibiting the liquor traffic, wherein liquors are possessed which have been illegally manufactured or obtained.”
The above section is still law in the state of Ohio, and has been upheld by the courts in every instance wherein it has been invoked.
It is the contention of the defendant in error that if plaintiff in error seeks to show that the liquor seized upon the premises occupied by him was possessed in a bona fide private residence, it is first necessary that he show that the premises were not used for any business purpose, such as store, shop, saloon, restaurant, hotel, or boarding house; second, liquor being found upon the premises, that he must *199 prove that it was lawfully acquired and possessed.
This brings us directly to the question whether or not it is necessary for the state to allege or prove matter contained in a proviso or exception to a general statute.
This court, in the case of Petro v. State, 14 Ohio App., 256, speaking through Judge Ingersoll, and construing the same identical provisions of the Orabbe Act on which the defendant in error relies, spoke as follows:
“The complaint made by plaintiff in error is to the effect that the affidavit does not contain the negative allegation that the ‘possession’ charged was not in his bona fide dwelling house, and that therefore no offense was charged.
‘ ‘ The question before the court for decision, then, is whether it is necessary to set forth the negative averment to the matter of a proviso in a statute in an information or affidavit charging an offense.
“Our conclusion, after reviewing carefully the Ohio authorities on this proposition, is: That a negative averment to the matter of a proviso in a statute is not requisite in an information unless the matter of such proviso enters into and becomes a part of the description of the offense, or is a qualification of the language defining or creating it, and that the provision contained in Section 2 of the Crabbe Law above cited does not enter into and become a part of the description of the offense or qualify the general language defining the offense.
“The language of Section 3, which is the enacting clause of the law as to the offense of ‘possessing,’ is g’eneral, and malees it an offense for anyone to have intoxicating liquor in his possession. Section 2 simply creates an exception to the general provisions *200 of Section 3, charging the offense, and excepts from the operation of the law the possession of intoxicating liquor by anyone in his own private dwelling-house. ’ ’
From the foregoing opinion of this court it is evident that it is not incumbent upon the state to prove that the premises were not a bona fide private residence, but that the burden rests upon the defendant of proving that he comes within the exception or proviso of the statute, and to do this he must prove the premises to be a bona fide private residence as defined by the laws of Ohio.
This court in the Petro case, in a review of the Ohio authorities, quotes with approval Hirn v. State, 1 Ohio St., 15; Billigheimer v. State, 32 Ohio St., 435; Hale v. State, 58 Ohio St., 676, and Brinkman v. Drolesbaugh, 97 Ohio St., 171.
Counsel for defendant in error here contends that ample warrant for the position he takes is to be found at page 177 of the Brinkman case, quoted with approval by this court in reaching its decision in the Petro case:
“If the acts complained of in this case were within the exception, the defendant’s, rights were fully protected by permitting him to set them up in defense. These were matters as to which he had particular and special knowledge, and no harm can come to him nor to the state by imposing upon him the duty of bringing himself within such exceptions.”
We think that the rule laid down by the supreme court in the above-cited paragraph applies with full force to the facts of the case now before us. A search of the defendant’s premises is made. The law prohibits the possession of intoxicating liquors. Liquors a,re found upon the premises. The defend *201 ant claims the benefit of a proviso or exception contained in the law. The burden rests upon him to show that he comes within the proviso or exception. The facts “were matters as to which he had particular and special knowledge, and no harm can come to him nor to the state by imposing upon him the duty of bringing himself within such exceptions,” and proving that the liquor was not unlawfully acquired, if such is the .case.
On this point this court in its previous decisions has shown and quoted with approval an unbroken line of decisions from 1 Ohio State to 97 Ohio State, holding that where one claims the benefit of a proviso or exception the burden is on him to prove that he comes within such proviso or exception. In the present case, the defendant claims the benefit of paragraph 2 of Section 2 of the Crabbe Act, which this court has held to be such an exception as need not be averred or proven by the state, but should be proven by the defendant.
This court, in its concluding paragraph, and summing up its decision in the case of Petro v. State, 14 Ohio App., 256, says:
“In view of the doctrine so clearly laid down by the foregoing authorities, we are of the opinion that it was not necessary for the affidavit on which the arrest was based in the case at bar to contain the negative allegation that the possession of the alcohol by defendant was not in his private bona fide dwelling.”
The law in this respect has not changed, and it is still encumbent on the defendant to prove that he comes within the exception provided. The only thing that has changed is the definition of what is.a bona fide private dwelling, and we hold that a change *202 in the definition of a private dwelling does not transfer this duty or burden from the defendant to the state, but that the defendant must prove under the definition as it now exists that the premises were a bona fide private dwelling. In this case the defendant introduces no evidence whatever, and there is nothing before the court that would tend to bring the defendant within the exception provided in paragraph 2, Section 2 of the Crabbe Act.
In passing upon this question, the court of appeals of the fourth appellate district of Ohio, in the case of Callahan v. State, after quoting the definition of a bona fide private residence, as contained in the Miller Act, says:
“The legislature in this sentence undertook to define, for more efficient enforcement of the law, what places should not be considered bona fide private residences. The Miller Law takes out of the category of bona fide private residences those places where liquors are possessed which have been illegally obtained.”
And from the case of State v. Elson, ante, 184, we quote the following:
“It will be observed that the offense defined in Section 6212-15 consists in possessing intoxicating liquors, and when the proof establishes that fact it is all that is required under the statutory provision. * # * If the intoxicating liquor is possessed lawfully, that may be shown as a matter of defense.
“We do not think it necessary to aver in the affidavit that the intoxicating liquor is for beverage purposes for the further reason that the ‘Crabbe Act’ simply outlaws intoxicating liquor for beverage purposes, and the force and effect of that act *203 is that one who possesses it is guilty of an ofíense, unless such possession comes within the exceptions thereto, which exceptions must be affirmatively established as a defense.”
In summing up the Ohio law applicable to this case, the following is found :
The Crabbe Act outlaws intoxicating liquors except in certain ways therein specifically exempted from the operation of the law.
A defendant who wishes to avail himself of the exception provided in a statute must affirmatively show that he comes within such exception. In this case the defendant is claiming the benefit of an exception contained in paragraph 2, Section 2 of the Crabbe Act, and it is the holding of this court that the burden rests upon him to show that he comes within such exception, and to prove that he comes within such exception he must show his premises to be a bona fide private residence within the meaning of that term as defined by the Miller Act.
In conclusion, we wish to again emphasize these two things:
First, no demand having been made for the return of the property seized under the search warrant, it was properly admitted in evidence.
Second, the defendant claiming the benefit of an exception in the statute, the burden rests on him affirmatively to show that he comes within such exception. To do that in this case he must prove that the premises wherein the liquor was seized were a bona fide private residence under the laws of Ohio, and to do this he must establish the fact that the liquors found in his possession were lawfully obtained.
Both of these questions we feel have been decided in favor of this construction by this court. We feel *204 that the previous findings and decisions of this court were correct and sound, and that in accordance therewith the judgment of the court below is correct and should be and it hereby is affirmed.

Judgment affirmed.

Vickery, P. J., and Sullivan, J.; concur.