BENDER *v*. ADDAMS ET AL.

(Decided February 13, 1928.)

*Mr. G. O. Farquharson,* for plaintiff in error.
*Mr. Geo. C. Dissette, Mr. John A. Elden,* and
*Messrs. Simmons, De Witt & Vilas,* for defendants
in error.

VICKERY, J. This action came into this court on a petition in error to the common pleas court of Cuyahoga county, and there is an interesting history in back of it and some interesting questions involved in the discussion of it, several of which will have to be disposed of in order to properly dispose of the questions now before this court.

It seems that George Bender is a state Senator, and that he lives at 13038 Cedar road, Cleveland Heights, Cuyahoga county, in a private residence, exclusively used as a private residence, and there are no stores or anything like a business place attached to, or in the immediate vicinity of, his home.

It further appears that, at the time of the events in controversy, Stanton Addams was a justice of the peace in and for East Cleveland township; that B. F. McDonald was the state prohibition commissioner of the state of Ohio; W. J. Patrick was a state prohibition inspector, who had been appointed by McDonald, and had given a bond to the state of Ohio for the performance of his duties, and was located in the Cleveland district; that John Connors was a special policeman of East Cleveland, engaged as a dry raider, I believe; and that the Southern Surety Company was on the bond of Connors and another man named Boyer.

It seems that, prior to the events which are narrated in the petition, somebody wrote an anonymous letter to Boyer, intimating that liquor was to be found in the place where Bender was living, and, upon the strength of this, at the request of Boyer, Patrick filed an affidavit, and had issued to himself a search warrant, without naming any defendant, authorizing him to search this place named in the

anonymous letter, and no effort was made by Patrick, Connors, Boyer, or any of them, to investigate, to see what this place was, or who lived there. They simply took an anonymous letter, apparently unsigned, and swore out a search warrant, and Patrick and Connors took this warrant, and went into Bender's house, and searched the house from top to bottom, found no liquor whatever of any kind or description, and then left. Some of the other defendants were on the outside.

On the trial of the action, on motion, a judgment was rendered by the court in favor of McDonald, discharging him from the case, and that is one of the grounds of error that is prosecuted here. Addams was let out of the case through a demurrer filed in his behalf prior to the time of the trial, and, as error is not prosecuted against that release, Addams is not before us. Subsequently Boyer died, and there is no claim made against him in this case. All of the above parties were either let out before the trial, or during the trial.

The case was submitted to a jury against Patrick and Connors, and a verdict was returned against Patrick in the sum of $25,000, and the jury, under the charge of the court, which is alleged as one of the errors to which I will come later, found in favor of Connors.

Subsequently a motion for a new trial was made to the trial court, and the verdict against Patrick was set aside, and that case is now pending in the court below, although it is claimed by counsel for Patrick that a motion for judgment notwithstanding the verdict was filed, and that, it being overruled by the court, the case is up here on error.

Inasmuch as there was no verdict, we do not see how a judgment could be rendered. In any event, in the present record it shows that there has been no final judgment against Patrick, and therefore error cannot be prosecuted to this court. Patrick, had he elected, could have had a judgment in his favor notwithstanding the verdict. That would have been a proper proceeding, and then he could have prosecuted error against that, but, when he elected to file a motion for a new trial, and that motion was granted, there was no final judgment from which error could be prosecuted. We are not saying that proceedings might not have been taken in the court which would have permitted Patrick to withdraw his answer and refile his demurrer, and then submit to a judgment against him, and then, not desiring to plead further, he could have carried that to this court on error; but the record does not show that that was done, and that disposes of the cross-petition to enter up judgment in his favor, or whatever they may claim for this rather novel proceeding.

The Southern Surety Company is in here only because it was on the bond of Connors and Boyer, and, of course, Boyer being out of it, if Connors is not liable, the surety company is not liable either.

This, I think, states the various parties and their relation to this law suit.

Now the theory of the case was that, inasmuch as this was a "bona fide" private residence, the issuance of a search warrant was illegal, and that it gave no right to Patrick and Connors to enter upon the premises; that they were trespassers, and were

liable for whatever damages might have occurred. In any event, they were liable for nominal damages.

This necessitates a somewhat lengthy discussion of the law with respect to the status of a "bona fide" private residence.

There is no question that *in the instant case,* even under the Miller law, to construe it as it has been argued, this Bender residence remained a private residence and a "bona fide" private residence, because there was no liquor of any kind, contraband or bond liquor, found on the premises. So far as this case is concerned, the persons who entered the premises were trespassers.

Now the theory of holding McDonald was on the ground that there existed the relationship of principal and agent between him and Patrick, and that the doctrine of *"respondeat superior"* applied. In other words, that Patrick was not an *officer;* that he was simply the *agent* of McDonald; and that if Patrick was responsible as agent, the principal would likewise be liable. We do not think the doctrine of *"respondeat superior"* applies in this case. We do not think that Patrick was an employee of McDonald. He was appointed, as an inspector, it is true, by McDonald, and he gave a bond to the state of Ohio for the faithful performance of his duties. He drew his pay from the state of Ohio and was in no sense an employee of McDonald. The record shows that McDonald did not participate, either directly or indirectly, in this so-called raid; that he was not present, and did not enter upon the premises. And there is no allegation or proof of a conspiracy to commit an unlawful act. Therefore, we do not see upon what theory McDonald could be

held responsible. That being so, there was no error in the court's directing a verdict in his favor.

All the other parties having been let out of the case, no error being prosecuted except as to Connors and McDonald, it is not necessary to discuss the liability of Addams and Boyer any further.

Now, as already stated, both from subsequent events and what should have appeared before anything was done, the home of Senator Bender was a "bona fide" private residence. Now, then, that being so, can the defendants escape responsibility by showing that they had a search warrant? And the only defendant that is now before the court, having eliminated the question of McDonald, is Connors.

Now it must be remembered that Connors went into this house with Patrick and searched the house, perhaps not very diligently, but, in any event, they went to this house under and by virtue of this so-called search warrant, and this, together with the charge of the court, which will be referred to later, is the basis upon which the plaintiff seeks to reverse the judgment rendered in favor of Connors.

Under the sections of the statute, and I will not refer to them in all instances by their particular numbers, a "bona fide" private residence unconnected with any store or business is immune from a search warrant, and, but for the so-called Miller Act (Section 7, of the Miller Act), and Section 6212-27 of the General Code, which is called the Miller Law, I say, but for this law—a private residence would *always remain* immune from search.

Now it is claimed that the Miller Act changed the law heretofore existing, so that, if one had a search

warrant to search what would otherwise be a "bona fide" private residence, and he found liquor, or liquor that was illegally manufactured or obtained, then the house would cease to retain its character as a private residence, and those who held the search warrant would be immune from damages by reason of a search under such a warrant.

It would be interesting to read this section of the statute in conjunction with others. The section of the Miller law under discussion seems to me to refer to the *trafficking* in intoxicating liquors: "No place shall be regarded as a bona fide private residence under the laws prohibiting the liquor traffic, wherein liquors are possessed, which have been illegally manufactured or obtained." Now it will be seen that this section refers to *traffic* in intoxicating liquor, and the possession of liquor, illegally obtained or otherwise, is only to be taken in connection with the former part of this phrase, "trafficking in intoxicating liquors." Trafficking in intoxicating liquors is defined in Section 6212-15, which reads:

"No person shall, after the passage of this act, * * * manufacture, sell, barter, transport, import, export, deliver, furnish, receive, give away, prescribe, possess, solicit or advertise any intoxicating liquors."

Now this trafficking in liquors, as defined in this statute, does not very materially change the ordinary definition from a trafficking in intoxicating liquors. It means the buying, selling, enabling, procuring, or aiding to procure liquors in which there is to be a trafficking, and to possess them for that purpose.

Section 6212-14, paragraph 2, reads:

"The term 'given away' and the term 'possess' shall not apply to intoxicating liquor in a bona fide private dwelling."

So from these authorities, under the Miller law, the character of a "bona fide" private residence can only be changed, so as not to be immune from search, by doing something which amounts to a trafficking in liquors. The mere possession of liquor, no matter when manufactured, does not change the character of the house. It depends upon the *use* to which the house is put. The reason for the Miller law was that, under the guise of a private residence, persons so inclined might use their private house as a distributing point, and it would be immune from search, and to cure that evil the Legislature rightfully passed the Miller Act, because, if the purpose of the dry law could be evaded by simply making the private home the headquarters for distribution, and making it immune from search, the very language and aim of the law would be defeated.

Of course, a man taking liquor that was contraband to his home would be guilty of violating the statute in *transporting* it, and anybody who took it there would be guilty of transporting, and be liable under the law, but if, we will say, a bottle of whisky was in a man's house, and there was no evidence of selling or otherwise violating the law, the mere fact that that bottle of whisky, or brandy, or whatever it might be, was there, would not change the character of that house from a private residence to that of a business place, so as to prevent it from being immune from search by a search warrant.

Now we know that the courts have gone a good

ways, and our own court in the case of *Ignath* v. *State,* 16 Ohio App., 191, which, so far as we know, never went to the Supreme Court, made some observations, and the writer of this opinion concurred in the judgment. The judgment in that case was right. The court below was wrong, but the writer of that opinion, the late Judge Ingersoll, went much farther than it was necessary to go, and said many things which it was not necessary to say, and, so far as these observations are concerned, they are mere *obiter dicta* in the opinion.

In the case of *Blatnik* v. *State,* 23 Ohio App., 137, 154 N. E., 814, this court went on record very much in the same attitude that we now take in respect to this proposition. That case, however, never went to the Supreme Court, and it is nothing more than a ruling of this court, and I do not think the judgment in this case is contrary to the opinion laid down in that case, but rather coincides with it.

Again, the sole question is whether or not merely finding liquor having more than one-half of 1 per cent. of alcohol in it, fit for beverage purposes, in a private residence, without any proof of any sale or trafficking in the liquor, changes the character of the private residence. I do not believe it does. If the officers should find whisky in the house, procured prior to the enactment of the Volstead Act or the Eighteenth Amendment, the house would be admitted to be a "bona fide" private residence, unless, of course, the owner was trafficking, and he would have no more right to traffic in liquor that was procured before passage of the Eighteenth Amendment than he would to traffic in that which was procured since.

· We are not saying that, before you could change the character of a private residence into a place for which a search warrant might be issued, it would be necessary in all cases to show by direct evidence that there was a *sale* of liquor. The quantity of liquor that was procured, how often it was procured — all of such things could be taken into consideration as bearing upon the question as to whether or not there was a trafficking in intoxicating liquors, and, even though the authorities might not show, as a matter of fact, that there was a sale, yet circumstances might be sufficient to taint that house, so that it would cease to be a "bona fide" residence, but I am talking of the instant case, if you please, where there is nothing in the surroundings, nothing on the premises, nothing anywhere, that would change the character of this house, and, even if the officers had found a bottle of liquor, unless it were under such circumstances that a trafficking might be presumed, the mere possessing of a bottle of liquor would not of itself change the character of the home into that of a place not immune from search.

Now, if you will notice the statutes that provide for a search warrant to issue to search a private house, it is where such house is attached to or connected with a place of business, and in almost all the cases that have come before us in the last ten years, since this law went into effect, there has been connected with the home a soft drink parlor, a grocery store, or some place of business, and very rarely, if ever, has there been a "bona fide" residence brought in question.

With this in mind, let us make this proposition:

That under the law, in the same Miller Act (Section 6212-27, General Code), is this provision:

"Provided that nothing in this act shall be construed to permit any person to enter or search, with or without a warrant, a bona fide private residence as herein defined."

Now this statute is simply in accordance with the general law that a man's home or his house is his castle, and is immune. That being so, the proposition that we lay down is that, a house being a "bona fide" private residence, no officers of the law seeking to enforce the dry law have a right, either with or without a warrant, to enter and search a "bona fide" private house. If they do so, they do so at their peril, and are trespassers *ab initio,* and are liable for at least nominal damages.

We are of the opinion, in view of the positive prohibition of the statute against the issuance of a search warrant to search a "bona fide" private residence, that, before an officer is authorized to swear to an affidavit upon which a search warrant is to be issued, he must first investigate, and have reasonable grounds to believe that that which appears to be a "bona fide" private residence is in fact not a "bona fide" private residence.

Let us take these propositions in connection with the charge of the court. The charge was in effect that, if Connors did not know of the situation and circumstances, and he went in there at the request of Patrick, who had a search warrant, he would not be responsible, and the jury must have believed and relied upon this statement and followed the instructions of the court. Now every man, especially an officer, who seeks to enforce law, must know the law,

and Connors is presumed to know that under no circumstances, with or without a search warrant, could he search the ''bona fide'' private house of Bender or anybody else. That being so, when he entered upon these premises he was guilty of a trespass, and the court was wrong in his charge to the jury upon which this verdict was based, because the evidence is undisputed that Connors did go in this house with Patrick, and they searched this house from cellar to garret. It is said they did it with the consent of Senator Bender. Well, Senator Bender did not want to create a disturbance by fighting with officers, and so he did what most men would do, made the best of a bad situation, and smilingly, perhaps, permitted them to search the house, but that does not show that they were invited into the house and that he waived any of his rights. It simply shows that he did not obstruct the officers in what they regarded as the performance of their duties. But that does not excuse the officers.

We think that searching a ''bona fide'' private house, with or without a warrant, is a trespass, and a violation of the rights of the party who owns the house, who was in possession when it was so searched, and such plaintiff would be entitled to recover at least nominal damages.

Much has been said about compensatory or punitive damages in this case, but they are unimportant, inasmuch as the jury found under the instruction of the court for Connors, and Connors, after disposal of the McDonald case, is the only one left to be disposed of.

We think, therefore, that the court was wrong in his charge, and it was such prejudicial error that it

resulted in a wrong judgment, and for that reason the judgment will be reversed and the case remanded to the common pleas court to be retried.

*Judgment reversed and cause remanded.*

SULLIVAN, P. J., and LEVINE, J., concur.