GOULED *v.* UNITED STATES.

CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 250.    Argued January 4, 1921.—Decided February 28, 1921.

1. The Fourth and Fifth Amendments are to be liberally construed. P. 303.
2. When a defendant in a criminal case first learns of the Government's possession of his document when it is offered against him on the trial, his objection that it was obtained by an unreasonable search and seizure should not be overruled as coming too late. P. 305.
3. An unreasonable search and seizure, in the sense of the Fourth Amendment, does not necessarily involve the employment of force or coercion, but is committed when a representative of any branch or subdivision of the Government, by stealth, through social acquaintance, or in the guise of a business call, gains entrance to the house or office of a person suspected of crime, whether in the presence or absence of the owner, and, in the owner's absence, searches for and abstracts his papers without his knowledge or consent. P. 305.
4. The admission of a paper so obtained in evidence against and over the objection of the owner when indicted for crime, compels him to be a witness against himself, in violation of the Fifth Amendment. P. 306.
5. The Fourth Amendment permits of searches and seizures under

_____

valid search warrants, when justified by an interest of the public, or of the complainant, in the property to be seized, or in its possession, or when a lawful exercise of police power renders its possession by the accused unlawful and provides for its seizure; and papers as such are not immune from such search and seizure. P. 308.

6. But papers of no pecuniary value in themselves, which are evidence of criminal fraud against their owner, and are of interest to and are sought by the Government for use as evidence merely and not because they have been or may be used to defraud it, as an executed contract might be, cannot constitutionally be searched for and seized in their owner's house or office by resort to a search warrant. P. 310.

7. Papers lawfully obtained under a valid search warrant may be used as evidence by the Government in prosecuting a person for a different offense than that charged against him in the affidavit upon which the search warrant was issued. P. 311.

8. Where, in the progress of a criminal trial, it becomes probable that there has been an unconstitutional seizure of papers of the accused, it is the duty of the trial court to entertain an objection to their admission in evidence against him or a motion for their exclusion, and to decide the question as then presented, even where a motion to return the papers has been denied before trial and by another judge. P. 312.

THE case is stated in the opinion.

*Mr. Charles E. Hughes,* with whom *Mr. Martin W. Littleton* and *Mr. Owen N. Brown* were on the brief, for Gouled.

*The Solicitor General* for the United States:

Either actual force or legal compulsion is necessary to constitute an unreasonable search and seizure.

A search made by invitation or with consent freely given could not be called an unreasonable search.

The holding of *Boyd* v. *United States,* 116 U. S. 616, is that force is a material ingredient in any unreasonable search and seizure, though this need not always be physical force, but that such force is present when a legislative act requires the accused either to surrender his pa-

pers or submit to severe pains and penalties. The rule
requiring force as an ingredient has not been further modi-
fied by any later decisions of this court. On the contrary,
when the rule of the *Boyd Case* has been applied, the court
has been careful to show that that rule rests upon the
proposition that compulsion by legislative or judicial
authority is the equivalent of physical force by which, as a
result of a search, a man is dispossessed of his property.
*Hale* v. *Henkel*, 201 U. S. 43.

In the present case, the certificate expressly negatives
the use of force of any kind. Cohen entered the office, not
under any claim of right, but as a friend. He gained access
to. the papers in the same way. He had and claimed to
have no legal process. No legislative act gave him au-
thority, and he claimed no authority under any such act.
Physical force was not used and there is no pretense of any
legal compulsion to which Gouled was subjected. This
alone precludes any conclusion that there was a violation
of the Fourth Amendment.

The Fourth Amendment is a limitation upon the powers
of the Federal Government. It is not violated by a search
and seizure, however wrongful, which is not made under
governmental authority, real or assumed, or under color of
such authority. *Barron* v. *Baltimore*, 7 Pet. 243, 249;
*Boyd* v. *United States, supra; Adams* v. *New York*, 192
U. S. 585, 598; *Weeks* v. *United States*, 232 U. S. 383, 394.

That it was not intended to apply the rule laid down in
the *Weeks Case* to the acts of an officer of the Federal
Government merely because he happened to be such an
officer, but only to such acts of his as are done under color
of his office or under a claim of authority, was made clear
throughout the opinion.

In *Silverthorne Lumber Co.* v. *United States*, 251 U. S.
385, 391, the court is again careful to recognize that, in
order to be within the protection of the Fourth Amend-
ment, the acts of an officer of the Government must be

done under color of office or authority. See *Flagg* v. *United States*, 233 Fed. Rep. 481, 483.

Every search and seizure made by an officer without a search warrant is not within the condemnation of the Fourth Amendment. It is the right and duty of the Government to secure evidence of crime, even from the accused himself, if this can be done without violating his constitutional rights. These rights are not violated if an officer goes to the accused and asks and is granted permission to enter his house or his office. Equally they are not violated if the officer, without express invitation or permission, enters a place of business which is open to the public. And again, if the personal relations existing between the officer and the accused are such that the former is in the habit of visiting the latter at his office or his home, there is nothing unlawful in his making such a visit, even though he may not disclose that he is in search of evidence. When an officer has lawfully entered a house or an office in any of these ways, the Constitution does not require him to shut his eyes to any evidence of crime that may be open to his observation. *State* v. *Mausert*, 88 N. J. L. 286; *Adams* v. *New York, supra,* 597.

These decisions make it clear that if the entry and whatever search is made are made lawfully, any evidence that may be incidentally obtained while thus acting lawfully is not obtained through an unconstitutional search and seizure. In the present case, even if Cohen had been an officer, it could not be said that he entered the office of Gouled or obtained access to his papers unlawfully, for the certificate excludes all idea of force or legal compulsion as a result of which any search was made or information obtained.

It is not a valid objection to the use of papers in evidence that they have been seized as the result of an unreasonable search and their admission is not error unless the court has committed a previous error in refusing,

upon application seasonably made, to order them returned.

*Adams Case, supra,* 594–598; *Weeks Case, supra,* 393, 396, 398; *Johnson* v. *United States,* 228 U. S. 457, 458; *Matter of Harris,* 221 U. S. 274, 279, 280; *Perlman* v. *United States,* 247 U. S. 7, 15.

The Act of June 15, 1917, expressly authorizes search warrants for *property* which has been used as the means of committing a felony. That one's private papers are his property in the fullest sense of that word, regardless of whether they may possess any value to another, can scarcely be doubted. See *Boyd Case, supra,* 627. Contracts may be used to and may be the means of bribing public officials and defrauding the Government.

Even if the particular papers seized and subsequently used in evidence were not such as could have been lawfully made the object of a search warrant, their seizure cannot from this record be said to have been in violation of the Fourth Amendment. When the officer went to the office he was serving a warrant which had a legal purpose in the attempt to find the papers described. In making the search, therefore, he was acting legally; and if, while so acting, he discovered evidence of crime and took it, he did not violate the rights of Gouled under the Fourth Amendment. This was held in the *Adams Case, supra.*

An act of Congress which authorizes a search warrant for property which has been used in the commission of a felony is not subject to constitutional objections.

MR. JUSTICE CLARKE delivered the opinion of the court.

In a joint indictment the plaintiff in error, Gouled, one Vaughan, an officer of the United States Army, and a third, an attorney at law, were charged, in the first count, with being parties to a conspiracy to defraud the United States, in violation of § 37 of the Federal Criminal Code, and, in the second count, with having used the mails to

promote a scheme to defraud the United States, in violation of § 215 of that Code. Vaughan pleaded guilty, the attorney was acquitted, and Gouled, whom we shall refer to as the defendant, was convicted, and thereupon prosecuted error from the Circuit Court of Appeals, which certifies to this court six questions which we are to consider.

Of these questions, the first two relate to the admission in evidence of a paper surreptitiously taken from the office of the defendant by one acting under direction of officers of the Intelligence Department of the Army of the United States, and the remaining four relate to papers taken from defendant's office under two search warrants, issued pursuant to the Act of June 15, 1917, c. 30, 40 Stat. 217, 228. It was objected on the trial, and is here insisted, that it was error to admit these papers in evidence because possession of them was obtained by violating the rights secured to the defendant by the Fourth and Fifth Amendments to the Constitution of the United States.

The Fourth Amendment reads:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The part of the Fifth Amendment here involved reads:

"No person . . . shall be compelled in any criminal case to be a witness against himself."

It would not be possible to add to the emphasis with which the framers of our Constitution and this court (in *Boyd* v. *United States*, 116 U. S. 616, in *Weeks* v. *United States*, 232 U. S. 383, and in *Silverthorne Lumber Co.* v. *United States*, 251 U. S. 385) have declared the importance to political liberty and to the welfare of our country of the due observance of the rights guaranteed under the Consti-

tution by these two Amendments. The effect of the decisions cited is: that such rights are declared to be indispensable to the "full enjoyment of personal security, personal liberty and private property"; that they are to be regarded as of the very essence of constitutional liberty; and that the guaranty of them is as important and as imperative as are the guaranties of the other fundamental rights of the individual citizen,—the right, to trial by jury, to the writ of *habeas corpus* and to due process of law. It has been repeatedly decided that these Amendments should receive a liberal construction, so as to prevent stealthy encroachment upon or "gradual depreciation" of the rights secured by them, by imperceptible practice of courts or by well-intentioned but mistakenly over-zealous executive officers.

In the spirit of these decisions we must deal with the questions before us.

The facts derived from the certificate, essential to be considered in answering the first two questions, are: that in January, 1918, it was suspected that the defendant, Gouled, and Vaughan were conspiring to defraud the Government through contracts with it for clothing and equipment; that one Cohen, a private in the Army, attached to the Intelligence Department, and a business acquaintance of defendant Gouled, under direction of his superior officers, pretending to make a friendly call upon the defendant, gained admission to his office and, in his absence, without warrant of any character, seized and carried away several documents; that one of these papers, described as "of evidential value only" and belonging to Gouled, was subsequently delivered to the United States District Attorney, and was by him introduced in evidence over the objection of the defendant that possession of it was obtained by a violation of the Fourth or Fifth Amendment to the Constitution; and that the defendant did not know that Cohen had carried away any of his papers until

he appeared on the witness stand and detailed the facts with respect thereto as we have stated them, when, necessarily, objection was first made to the admission of the paper in evidence.

Out of these facts arise the first two questions, both relating to the paper thus seized. The first of these is:

"Is the secret taking or abstraction, without force, by a representative of any branch or subdivision of the Government of the United States, of a paper writing of evidential value only belonging to one suspected of crime and from the house or office of such person,—a violation of the 4th amendment?"

The ground on which the trial court overruled the objection to this paper is not stated, but from the certificate and the argument we must infer that it was admitted either because it appeared that the possession of it was obtained without the use of force or illegal coercion, or because the objection to it came too late.

The objection was not too late, for, coming as it did promptly upon the first notice the defendant had that the Government was in possession of the paper, the rule of practice relied upon, that such an objection will not be entertained unless made before trial, was obviously inapplicable.

The prohibition of the Fourth Amendment is against all unreasonable searches and seizures and if for a Government officer to obtain entrance to a man's house or office by force or by an illegal threat or show of force, amounting to coercion, and then to search for and seize his private papers would be an unreasonable and therefore a prohibited search and seizure, as it certainly would be, it is impossible to successfully contend that a like search and seizure would be a reasonable one if only admission were obtained by stealth instead of by force or coercion. The security and privacy of the home or office and of the papers of the owner would be as much invaded and the search and

seizure would be as much against his will in the one case as in the other, and it must therefore be regarded as equally in violation of his constitutional rights.

Without discussing them, we cannot doubt that such decisions as there are in conflict with this conclusion are unsound, and that, whether entrance to the home or office of a person suspected of crime be obtained by a representative of any branch or subdivision of the Government of the United States by stealth, or through social acquaintance, or in the guise of a business call, and whether the owner be present or not when he enters, any search and seizure subsequently and secretly made in his absence, falls within the scope of the prohibition of the Fourth Amendment, and therefore the answer to the first question must be in the affirmative.

The second question reads:

"Is the admission of such paper in evidence against the same person when indicted for crime a violation of the 5th amendment? "

Upon authority of the *Boyd Case, supra,* this second question must also be answered in the affirmative. In practice the result is the same to one accused of crime, whether he be obliged to supply evidence against himself or whether such evidence be obtained by an illegal search of his premises and seizure of his private papers. In either case he is the unwilling source of the evidence, and the Fifth Amendment forbids that he shall be compelled to be a witness against himself in a criminal case.

The remaining four questions relate to three other papers which were admitted in evidence on the trial over the same constitutional objections as were interposed to the admission of the first paper. One was an unexecuted form of contract between the defendant and one Lavinsky, another was a written contract, signed by the defendant and one Steinthal, and the third was a bill for

disbursements and professional services rendered by the
attorney at law to the defendant Gouled.

Of these papers, the first was seized in defendant's
office under a search warrant, dated June 17, and the other
two under a like warrant dated July 22, 1918, each of
which was issued by a United States Commissioner on
the affidavit of an agent of the Department of Justice.
It is certified that it was averred in the first affidavit that
there were in Gouled's office "certain property, to wit:
certain contracts of the said Felix Gouled with S. Lavinsky
[which] were used as a means of committing a felony, to
wit:   .   .   . as means for the bribery of a certain officer
of the United States." It is also certified that the second
affidavit declared that Gouled had at his office "certain
letters, papers, documents and writings which   .   .   . re-
late to, concern and have been used in the commission of
a felony, to wit: a conspiracy to defraud the United
States." Neither the affidavits nor the warrants are given
in full in the certificate, but no exception was taken to
the sufficiency of either.

After the seizure of the papers, a joint indictment was
returned, as stated, against Gouled, Vaughan and the
attorney, and before trial a motion was made by Gouled,
for a return of the papers seized under the search warrants,
which was denied, and when the motion was renewed
at the trial, but before any evidence was introduced, it
was again denied. The denial of this motion is not as-
signed as error.

The contract of the defendant with Steinthal, which
was seized under the warrant, was not offered in evidence
but a duplicate original, obtained from Steinthal, was
admitted over the objection that the possession of the
seized original must have suggested the existence and the
obtaining of the counterpart, and that therefore the use
of it in evidence would violate the rights of the defendant
under the Fourth or Fifth Amendment. *Silverthorne*

*Lumber Co.* v. *United States,* 251 U. S. 385. The unsigned form of contract and the attorney's bill were offered and also admitted over the same constitutional objection. There is no statement in the certificate of the contents of these papers, but it is said of them only, that they belonged to Gouled, that they were without pecuniary value and that they constituted evidence "more or less injurious to" the defendant.

It is apparent from this statement that to answer the remaining four questions involves a consideration of the applicable law of search warrants.

The wording of the Fourth Amendment implies that search warrants were in familiar use when the Constitution was adopted and, plainly, that when issued "upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized," searches, and seizures made under them, are to be regarded as not unreasonable, and therefore not prohibited by the Amendment. Searches and seizures are as constitutional under the Amendment when made under valid search warrants as they are unconstitutional, because unreasonable, when made without them,—the permission of the Amendment has the same constitutional warrant as the prohibition has, and the definition of the former restrains the scope of the latter. All of this is abundantly recognized in the opinions of the *Boyd* and *Weeks Cases, supra,* in which it is pointed out that at the time the Constitution was adopted stolen or forfeited property, or property liable to duties and concealed to avoid payment of them, excisable articles and books required by law to be kept with respect to them, counterfeit coin, burglars' tools and weapons, implements of gambling "and many other things of like character," might be searched for in home or office and if found might be seized, under search warrants, lawfully applied for, issued and executed.

Although search warrants have thus been used in many cases ever since the adoption of the Constitution, and although their use has been extended from time to .time to meet new cases within the old rules, nevertheless it is clear that, at common law and as the result of the *Boyd* and *Weeks Cases, supra,* they may not be used as a means of gaining access to a man's house or office and papers solely for the purpose of making search to secure evidence to be used against him in a criminal or penal proceeding, but that they may be resorted to only when a primary right to such search and seizure may be found in the interest which the public or the complainant may have in the property to be seized, or in the right to the possession of it, or when a valid exercise of the police power renders possession of the property by the accused unlawful and provides that it may be taken. *Boyd Case,* pp. 623, 624.

There is no special sanctity in papers, as distinguished from other forms of property, to render them immune from search and seizure, if only they fall within the scope of the principles of the cases in which other property may be seized, and if they be adequately described in the affidavit and warrant. Stolen or forged papers have been so seized, *Langdon* v. *People,* 133 Illinois, 382, and lottery tickets, under a statute prohibiting their possession with intent to sell them, *Commonwealth* v. *Dana,* 2 Metc. 329, and we cannot doubt that contracts may be so used as instruments or agencies for perpetrating frauds upon the Government as to give the public an interest in them which would justify the search for and seizure of them, under a properly issued search warrant, for the purpose of preventing further frauds.

With these principles of law in mind, we come to the remaining questions.

The third question reads: "Are papers of no pecuniary value but possessing evidential value against persons presently suspected and subsequently indicted under

Sections 37 and 215 of the United States Criminal Code, when taken under search warrants issued pursuant to the Act of June 15, 1917, from the house or office of the person so suspected,—seized and taken in violation of the 4th Amendment? "

That the papers involved are of no pecuniary value is of no significance. Many papers, having no pecuniary value to others, are of the greatest possible value to the owners and are property of a most important character (*Boyd Case, supra,* pp. 627, 628), and since those here involved possessed "evidential value" against the defendant, we must assume that they were relevant to the issue.

Restraining the questions to the papers described, and first as to the unexecuted form of contract with Lavinsky, a stranger to the indictment. While the contents of this paper are not given, it is impossible to see how the Government could have such an interest in such a paper that under the principles of law stated it would have the right to take it into its possession to prevent injury to the public from its use. The Government could desire its possession only to use it as evidence against the defendant and to search for and seize it for such purpose was unlawful.

Likewise the public could be interested in the bill of the attorney for legal services only to the extent that it might be used as evidence and the seizure of this also was unlawful.

As to the contract with Steinthal, also a stranger to the indictment. It is not difficult, as we have said, to imagine how an executed written contract might be an important agency or instrumentality in the bribing of a public servant and in perpetrating frauds upon the Government so that it would have a legitimate and important interest in seizing such a paper in order to prevent further frauds, but the facts necessary to give this contract such a character do not appear in the certificate. On the con-

trary, this third question recites that the papers are all of no pecuniary, but are of evidential, value, and in the sixth question it is recited that they are "of evidential value only," so that it is impossible to say; on the record before us, that the Government had any interest in it other than as evidence against the accused, and therefore as to all three papers the answer to the question must be in the affirmative.

The fourth question reads: "If such papers so taken are admitted in evidence against the person from whose house or office they were taken, such person being then on trial for the crime of which he was accused in the affidavit for warrant,—is such admission in evidence a violation of the 5th amendment?"

The same papers being involved, the answer to this question must be in the affirmative for, they having been seized in an unconstitutional search, to permit them to be used in evidence would be, in effect, as ruled in the *Boyd Case*, to compel the defendant to become a witness against himself.

The fifth question reads: "If in the affidavit for search warrant under Act of June 15, 1917, the party whose premises are to be searched be charged with one crime and property be taken under the warrant issued thereon, —can such property so seized be introduced in evidence against said party when on trial for a different offence?"

It has never been required that a criminal prosecution should be pending against a person in order to justify search for and seizure of his property under a proper warrant, if a case of crime having been committed and of probable cause is made out sufficient to satisfy the law and the officer having authority to issue it, and we see no reason why property seized under a valid search warrant, when thus lawfully obtained by the Government, may not be used in the prosecution of a suspected person for a crime other than that which may have been described

in the affidavit as having been committed by him. The
question assumes that the property seized was obtained
on a search warrant sufficient in form to satisfy the law,
and if the papers to which the question refers had been
of a character to be thus obtained, lawfully, it would
have been competent to use them to prove any crime
against the accused as to which they constituted relevant
evidence.

The sixth question reads: "If papers of evidential
value only be seized under a search warrant and the party
from whose house or office they are taken be indicted;—
if he then move before trial for the return of said papers
and said motion is denied—is the court at trial bound in
law to inquire as to the origin of or method of procuring
said papers when they are offered in evidence against the
party so indicted? "

The papers being of "evidential value only" and having
been unlawfully seized, this question really is, whether, it
having been decided on a motion before trial that they
should not be returned to the defendant, the trial court,
when objection was made to their use on the trial, was
bound to again inquire as to the unconstitutional origin
of the possession of them. It is plain that the trial court
acted upon the rule, widely adopted, that courts in
criminal trials will not pause to determine how the pos-
session of evidence tendered has been obtained. While
this is a rule of great practical importance, yet, after all,
it is only a rule of procedure, and therefore it is not to be
applied as a hard and fast formula to every case, regardless
of its special circumstances. We think rather that it is a
rule to be used to secure the ends of justice under the
circumstances presented by each case, and where, in the
progress of a trial, it becomes probable that there has
been an unconstitutional seizure of papers, it is the duty
of the trial court to entertain an objection to their
admission or a motion for their exclusion and to consider

and decide the question as then presented; even where a motion to return the papers may have been denied before trial. A rule of practice must not be allowed for any technical reason to prevail over a constitutional right.

In the case we are considering the certificate shows that a motion to return the papers, seized under the search warrants, was made before the trial and was denied; and that on the trial of the case before another judge, this ruling was treated as conclusive, although, as we have seen, in the progress of the trial it must have become apparent that the papers had been unconstitutionally seized. The constitutional objection having been renewed, under the circumstances, the court should have inquired as to the origin of the possession of the papers when they were offered in evidence against the defendant.

*Each question is answered, Yes.*