**TROY LAUNDRY CO. et al. v. WIRTZ, Chairman of the National Wage Stabilization Board.**

**No. 11162.**

Circuit Court of Appeals, Ninth Circuit.

March 27, 1946.

Rehearing Denied May 23, 1946.

54.

Hill, Morgan & Farrer, Carl M. Gould, and Charles P. McCarthy, all of Los Angeles, Cal., for appellants.

John F. Sonnett, Asst. Atty. Gen. (J. Francis Hayden, Sp. Asst. to Atty.Gen., of counsel), Harry I. Rand, Atty., Dept. of Justice, of Washington, D. C., Charles H. Carr, U. S. Atty., and Ronald Walker and Mildred L. Kluckhohn, Asst. U. S. Attys., all of Los Angeles, Cal., for appellee.

Before DENMAN, STEPHENS, and ORR, Circuit Judges.

DENMAN, Circuit Judge.

This is an appeal from an order and decree of the District Court that the Secretary-Treasurer of appellant corporation and F. R. Miller, its Vice President, and any person having control and custody of the books and records of the corporation, attend a hearing before the Enforcement Division of the Tenth Regional War Labor Board of the National War Labor Board at Los Angeles, California, on October 29, 1945, at 1:30 p. m., to testify as witnesses on behalf of the National War Labor Board in the matter of the Troy Laundry Company and produce at that time and place the books, papers, records and documents of the Troy Laundry Company mentioned in the order and decree.

The War Labor Board was conducting an inquiry to determine whether the wages paid by appellant exceeded those established by the regulations of the President under the Emergency Price Control Act of 1942 as amended October 2, 1942, 50 U.S.C.A. Appendix §§ 901, 961 et seq. to create in the President the power to stabilize wages.

Under that amendment the President was authorized and directed "in order to aid in the effective prosecution of the war * * * to issue a general order stabilizing prices, wages, and salaries, affecting the cost of living * * *" 50 U.S.C.App., Sec. 961, 50 U.S.C.A.Appendix § 961; and to exercise such powers and authority "through such department, agency, or officer as he shall direct" Id., Sec. 962. Employers were prohibited from paying, and employees from receiving wages or salaries in contravention of the regulations promulgated by the President under the Act.

If the Board's inquiry showed failure to conform to the wages fixed by the Board's regulations by their overpayment it would enable the President to perform his administrative function with reference to the fixing of prices for commodities or services in which the wage is a factor. 50 U.S.C.A. Appendix § 965(a).

The attendance of witnesses at hearings before the War Labor Board is required by Section 7(b) of the Act of June 25, 1943, providing "The Board, by its Chairman, shall have the power to issue subpenas requiring the attendance and testimony of witnesses, and the production of any books, papers, records, or other documents, material to any inquiry or hearing before the Board or any designated member or agent thereof. Such subpenas shall be enforceable in the same manner, and subject to the same penalties, as subpenas issued by the President under Title III of the Second War Powers Act, approved March 27, 1942."

Appellants contend that an "inquiry or hearing" concerning an employer's acts in contravention of the established wages is not included in these words of Section 7(b). We do not agree.

The Board's acquisition of its present power to make such an inquiry was through a succession of statutes and executive orders. Prior to the October 2, 1942, amendment of the Price Control Act, that is on January 12, 1942, the President by his executive order had created a board called the War Labor Board. Ex. Order 9017, 50 U.S.C.A.Appendix § 1507 note (7 F.R. 237). On October 3, 1942, he designated that Board the agency to make the regulation of wages provided in the Act of the day before, by his Executive Order 9250 (7 F.R. 7871), 50 U.S.C.A.Appendix § 901 note.

It is obvious that it was within the executive power of the President to inquire and determine the extent of appellants' wage overpayments, if any, were in contravention of the War Labor Board's wage regulations, to enable him to perform his function of fixing the price of the service or goods referred to above. Through the Economic Stabilization Director created by Executive Order 9250, supra, an order, approved by the President (7 F.R. 8748, 8750), gave to the War Labor Board the power to inquire and determine whether there had been a want of conformance by employers to the Board's wage regulations, § 4001.2 of the order providing

"The Board shall, subject to the provisions of sections 1, 2, 3, 4, 8, and 9 of Title II of Executive Order No. 9250, of October 3, 1942, have authority to determine whether any

"(a) Wage payments * * * are made in contravention of the Act, or any

rulings, orders or regulations promulgated thereunder." The order made the Board's determination of under or overpayments final in the exercise of any of the price fixing administrative functions of the President and in calculating any revenue law deductions.[1]

By its Act of June 25, 1943, Congress ratified the President's creation of the War Labor Board by his order 9017, supra, and his giving the Board power to inquire about and determine acts in contravention of the wage regulations created in § 4001.2 of the President's order, supra, Section 7(a) of the Act of June 25, 1943, 50 U.S.C. A.Appendix § 1507(a), providing "The National War Labor Board (hereinafter in this section called the 'Board'), established by Executive Order Numbered 9017, dated January 12, 1942, *in addition to all* powers conferred on it by section 1(a) of the Emergency Price Control Act of 1942, and by any Executive order or regulation issued under the provisions of the Act of October 2, 1942, entitled 'An Act to amend the Emergency Price Control Act of 1942, to aid in preventing inflation, and for other purposes', and by any other statute, *shall have the following powers and duties: * * *."* (Emphasis supplied.)

In addition to such powers of inquiry to determine non conformity with the wage regulations, the Act of June 25, 1943, provided for the Board's determination of disputes between labor organizations and employers in Section 7(a) (1), (2), and (3). For labor organization disputes paragraph (3) provides that the Board has power "To require the attendance of witnesses and the production of such papers, documents, and records as may be material to its investigation of facts in any labor dispute, and to issue subpenas requiring such attendance or production."

The next subsection 7(b), supra, provides for the subpoena of witnesses and the production of documents material to *"any* inquiry or hearing before the Board or any designated member or agent thereof." Appellants' contention that the words "any inquiry or hearing" apply only to the hearings of labor organization disputes provided for in paragraph (1), (2) and (3) of subsection 7(a), and do not apply to inquiries respecting wage payments in contravention of the Board's wage regulations, ignores the fact that the preceding paragraph of 7(a) provides for that latter inquiry.

■ Here we do not find the subpoena power by mere implication from the other powers. We hold that the above succession of statutes and orders explicitly confers the subpoena power in the Board for its inquiry to determine the existence of wage overpayments.

■ Appellants claim that, assuming the power to subpoena for evidence at such inquiry is granted appellee, its use, where, as here, the excess wages not only are determined for price administration purposes but may show their overpayment to constitute a misdemeanor under Section 11 of the Act of October 2, 1942, 50 U.S.C.A.Appendix § 971 violates the Fifth Amendment in forcing the corporation to produce evidence which may tend to incriminate it. This provision of the Fifth Amendment does not apply to corporations. Oklahoma Press Publishing Co. v. Walling, 66 S.Ct.

---

[1] "The Board shall, subject to the provisions of sections 1, 2, 3, 4, 8, and 9 of Title II of Executive Order No. 9250, of October 3, 1942, have authority to determine whether any

"(a) Wage payments, or

"(b) Salary payments to an employee totaling in amount not in excess of $5,000 per annum where such employee

"(1) In his relations with his employer is represented by a duly recognized or certified labor organization, or

"(2) Is not employed in a bona fide executive, administrative or professional capacity

are made in contravention of the Act, or any rulings, orders or regulations promulgated thereunder. Any such determination by the Board, made under rulings and orders issued by it, that a payment is in contravention of the Act, or any rulings, orders, or regulations promulgated thereunder, shall be conclusive upon all Executive Departments and agencies of the Government in determining the costs or expenses of any employer for the purpose of any law or regulation, either heretofore or hereafter enacted or promulgated, including the Emergency Price Control Act of 1942 or any maximum price regulation thereof, or for the purpose of calculating deductions under the revenue laws of the United States, or for the purpose of determining costs or expenses under any contract made by or on behalf of the United States. Any determination of the Board made pursuant to the authority conferred on it shall be final and shall not be subject to review by the Tax Court of the United States or by any court in any civil proceedings."

494, par. II, fourth paragraph and cases cited in footnote 17.

■ A similar contention that such use of the subpoena violates the right to be free of the unlawful searches and seizures of the Fourth Amendment is also disposed of by the Oklahoma Press Publishing Co. case. The Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. as here, made a violation of its wage fixing provisions a misdemeanor. The Oklahoma Press case holds that such administrative subpoenas as here issued are not violative of the search and seizure rights of the Fourth Amendment. The Fair Labor Standards Act requires records of wages to be kept[2] and the Act of October 2, 1942, does not. However, the reasoning of the Supreme Court's decision in the Oklahoma Press case does not rest upon the fact that the statute required the records to be kept. That Act in Section 11(a) 29 U.S.C.A. § 211(a), also gave the right of examination of the employees of the wage paying corporation and to investigate all the "facts, conditions, practices, or matters" deemed necessary to prove a violation. See footnote 22 of the Oklahoma Press decision.

■■ Appellants claim that by termination on December 31, 1945, of the War Labor Board by Executive Order No. 9672, 50 U.S.C.A.Appendix § 964 note (11 F.R. 221), the Board lost any power it may have had to issue subpoenas in inquiries respecting wages. We do not agree. The First War Powers Act of 1941, 50 U.S.C.A.Appendix § 601, empowers the President to redistribute the "functions, duties, and powers" of executive agencies. In the order prior to terminating the War Labor Board, the President transferred to the National Wage Stabilization Board of the Department of Labor all the "present powers, functions, and responsibilities" of the War Labor Board "relating to the stabilization of wages and salaries." The instant inquiry of the War Labor Board with the right we hold it has to issue subpoenas is a function and duty so transferred to the National Wage Stabilization Board. The application of W. Willard Wirtz, Chairman of the National Wage Stabilization Board, to be substituted for George Taylor, Chairman of the War Labor Board is ordered granted.

■ Appellants urge that, assuming the power to subpoena, it should be refused here because the knowledge of the documents sought was obtained by a prior illegal search. There was an inspection of appellants' books and documents by a woman representing herself as coming from the Bureau of Labor Statistics and her request for such inspection was granted. The contention is that having gained access on that mission she could not use the evidence for the instant purpose. Appellants rely on Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647. There is no merit in the contention. The War Labor Board was expressly empowered by Executive Order 9250 (7 F.R. 7871, 50 U.S.C. App., Sec. 901, note, 50 U.S.C.A.Appendix § 901 note, Tit. III, par. 2) "to avail itself of the services and facilities of such State and Federal departments and agencies as, in the discretion of the National War Labor Board, may be of assistance to the Board."

The order and decree appealed from are Affirmed.

---

[2] Cf. Bowles v. Glick Bros. Lumber Co., 9 Cir., 146 F.2d 566.