### HONIG v. UNITED STATES.
### No. 14765.

United States Court of Appeals,
Eighth Circuit.

Dec. 28, 1953.

J. Kehlor Carr, Jr., Clayton, Mo., and Samuel Raban, St. Louis, Mo., for appellant.

James C. Jones, III, Sp. Asst. to U. S. Atty., St. Louis, Mo. (Harry Richards, U. S. Atty., St. Louis, Mo., on the brief), for appellee.

Before JOHNSEN and COLLET, Circuit Judges, and NORDBYE, District Judge.

JOHNSEN, Circuit Judge.

Appellant was convicted by a jury of impersonating a federal officer, in violation of 18 U.S.C.A. § 912.[1] More specifically, he was charged and found to have falsely represented himself to one Osa Angle, under the alias of Frank Walker, as being an attorney for the National Labor Relations Board, and to have succeeded by this means in obtaining possession from Mrs. Angle of a $6,-300 deed of trust.

The only question that merits consideration here is whether the trial court was in error in overruling appellant's timely motion to suppress, and in subsequently allowing to be received over appellant's objection on the trial, certain items of evidence claimed to have been obtained by illegal search and seizure. Three items are entitled to discussion.

The first item is an identification card, which appellant had exhibited to Mrs. Angle in introducing himself to her as an attorney for the National Labor Relations Board. The card was one which appellant had had commercially printed, to which he had attached a photograph of himself, and which he had engaged in carrying as a credential. It bore the heading "United States Bureau of Labor Relations, Washington 25, D. C.," contained a signature "John Whitcomb (Chief Counsel)," and recited that "This is to certify that Frank Walker whose signature and photo is herein is legal field investigator and is hereby authorized to peruse legal documents, records, etc.—to be given every courtesy subject to presentation of this identification." On the back of the card there had been imprinted with a rubber stamp the words "U. S. Bureau of Labor Relations."

The second item is the rubber stamp itself which had been used to make the imprint on the back of the identification card, "U. S. Bureau of Labor Relations."[2]

The third item consists of seven blank stock certificates, removed from appellant's brief case, in which there were contained also some other papers, not here involved, including bank deposit slips, a partnership agreement, a release from a Ruth B. Burris, and a purported legal petition entitled J. C. Decker vs. United States.

All three of the items being considered were taken from appellant's hotel room, without the obtaining and use of a search warrant. As to the identification card, the Government contended, and the trial court found, that discovery thereof had been made and possession taken on the basis of a search to which appellant had given his consent before he was placed under arrest. As to the rubber stamp and the blank stock certificates, the Government's position and the trial court's holding were that these items were the product of a reasonable search and seizure made after appellant was placed under arrest, as a matter of proper incidence to the arrest itself.

The evidence in relation to the seizure of the identification card was clearly ample to entitle the trial court to find the existence of the facts which follow,

1. Whoever falsely assumes or pretends to be an officer or employee acting under the authority of the United States or any department, agency or officer thereof, and acts as such, or in such pretended character demands or obtains any money, paper, document, or thing of value, shall be fined not more than $1,000 or imprisoned not more than three years, or both." 18 U.S.C.A. § 912.

2. Appellant had had this stamp made in two parts or sections—one containing the words "U. S." and the other containing the words "Bureau of Labor Relations."

and to conclude on the basis of these facts and other evaluative elements involved in the hearing on the motion to suppress that the search made by the officers for the identification card was legally one to which appellant had consented and which had not gone beyond the bounds of the consent given.

An agent of the Federal Bureau of Investigation, accompanied by two police officers of the City of St. Louis, Missouri, had gone to appellant's hotel room in that city, after the FBI had received a report that appellant had been holding himself out as a federal officer or employee. They went to the hotel merely for the purpose of checking or investigating, without any warrant to make a search or for appellant's arrest. They knocked at appellant's door and, when he appeared, they identified themselves to him. He invited them to come into the room and thereafter admitted to them that he was Frank Walker.

The FBI agent then informed appellant of the complaint which had been received concerning him and inquired whether he had anything to identify himself. Appellant replied that he did not. The agent then asked whether appellant would mind if they looked around the room to see if they could find any identification, and appellant replied, "No, certainly, go ahead, gentlemen." One of the officers went to the closet, where appellant's coat was hanging, and discovered in one of its pockets the identification card which is here involved. Appellant was confronted with the identification card and admitted that it was his. He was then asked whether he was in fact a federal employee, replied that he was not, and declared that he had merely been using the identification card to impress people. One of the police officers thereupon placed him under arrest.

On the hearing of the motion to suppress, appellant took the stand, so that the court thus was afforded the opportunity to appraise the question of consent, not merely on the basis of the officers' testimony as such, but in relation to appellant's demeanor and attitude and the background of previous experience which he revealed in criminal violation and arrests.

We hold that on the elements and substance underlying the trial court's appraisal, appellant clearly is not entitled to a reversal for the court's refusal to suppress, and its receiving in evidence of, the identification card which the officers took from appellant's coat pocket in his hotel room just preceding his arrest. This item properly, on the record before us, could be regarded by the court as being within the application of the well-established rule that it is not a violation of the Fourth Amendment for officers, without a warrant, to make a search for and take possession of such articles as legally would be subject to seizure through the use of a warrant, where the person accused or being investigated has consented to the making of the search, if the consent has been given voluntarily and not as a matter of probable compulsion from the demands or domination of authority, and if the search has been kept within the bounds of the actual consent. See De Lapp v. United States, 8 Cir., 53 F.2d 627; Ruhl v. United States, 10 Cir., 148 F.2d 173, 174; Shores v. United States, 8 Cir., 174 F.2d 838, 845, 11 A.L.R.2d 635.

As to the rubber stamp and the blank stock certificates, both of which were taken from appellant's brief case, in the further search which the officers made of his room after placing him under arrest, the primary test to be applied is that of the equally well-established federal rule that an officer may, without a warrant, contemporaneously with and as an incident to the making of a valid arrest, search the immediate premises where the prisoner is taken into custody, if such premises are within the prisoner's control, for the purpose of finding and seizing any articles which (1) are the means by which the alleged crime has been committed; or (2) are connected with the alleged crime as its fruits; or (3) are instruments of a na-

ture capable and suggestive of possible use to effect an escape; or (4) are, in general, legal contraband, in that their possession by the prisoner is of itself unlawful—for example, counterfeiting plates, etc. Cf. 47 Am.Jur., Searches and Seizures, § 54, pp. 534, 535; Agnello v. United States, 269 U.S. 20, 46 S. Ct. 4, 70 L.Ed. 145; Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L. Ed. 231; Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399; United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653.

Other items of property, not directly falling within these four categories, revealed by such a search, may also some times be the subject of valid seizure, but this exception to the general rule is applicable only and narrowly to such things as it soundly can be said that, although their possession is not per se unlawful, their nature nevertheless is such inherently, in relation to the situation, that the public has an important preventive or protective interest in depriving the prisoner of their possession. See e. g., Gouled v. United States, 255 U.S. 298, 309, 310, 41 S.Ct. 261, 265, 65 L.Ed. 647, where it was recognized that it would be possible to establish such a public interest in an extraneous contract, which had been seized, where it could be shown that the instrument was capable primarily of being used by the defendant "in the bribing of a public servant and in perpetrating frauds upon the government".

■ These special situations are not capable of any exact definition and necessarily must be individually and carefully weighed in any judicial recognizing of an overshadowing of fundamental individual right by public protective interest, as a search-and-seizure matter. One limitation is however clear in federal standards—the public is not recognized as having any such general overshadowing interest in any item of property, not within the four categories of the general rule, as will make the seizure thereof valid in a search incident to an arrest, where such property is possessed of no other attribute or inherency than evidentiary value or admissible relevance alone, for purposes of a trial of the prisoner on the alleged offense. Gouled v. United States, supra, 255 U.S. at page 310, 41 S.Ct. 261; United States v. Lefkowitz, 285 U.S. 452, 463–466, 52 S.Ct. 420, 76 L.Ed. 877.

■ Under the guarantee of a number of the State Constitutions against unreasonable search and seizure, evidentiary value to convict, without more, has been recognized as a sufficient basis of sound public interest for taking possession of property. But, as we have indicated, under the Fourth Amendment, seizures of property, discovered in making a search of premises as an incident to an arrest for a federal offense, have not been recognized by the Supreme Court, against the fundamental individual right that is involved, as being entitled to be made merely because such property may be possessed of some evidentiary value for purposes of convicting.[3]

■ The rubber stamp used by appellant to imprint the words "U. S. Bureau of Labor Relations" on the back of the identification card was directly, we think, within the general rule stated, part of the means relied upon and employed by appellant to effect his unlawful impersonation and was entitled to be seized on this basis. And beyond its status as a means in the perpetrating of the crime, it could properly also be said, we think, that the stamp was one in which the public had a sound interest in the dispossessing of appellant, since there could hardly be any natural reason for appellant to have possession of such a stamp except as an instrument of fraud or deceit against the public and upon the Government.

---

3. As to the right to search for and seize anything of evidentiary value on the person of the accused, in contrast with the right as to his premises, see Weeks v. United States, 232 U.S. 383, 392, 34 S. Ct. 341, 58 L.Ed. 652; United States v. Kirschenblatt, 2 Cir., 16 F.2d 202, 203, 51 A.L.R. 416.

As to the blank stock certificates, there is nothing to show that they had in any way been a means or an instrument in what appellant had done. Furthermore, like the other legal documents and papers contained in his brief case, they were capable of a proper general possession, and they could not be said, except as a matter of projective suspicion, to have had any other actual basis in his hands. It would perhaps be entirely logical for the officers to assume at the time of the arrest that the certificates had some relationship to appellant's unlawful acts, but when no such relationship, as a means or as a fruit of the crime with which appellant was charged, was capable of being established on the hearing to suppress, the seizure could not be upheld on the ground of any mere evidentiary value of which they might be possessed, since the search and seizure then stood as to them as legally being one in which only evidential purposes could actually be said to have been involved.

Whether on the other hand the certificates might be contended to be of such slight relevance to a proving of the offense charged, in relation to appellant's intent, as not to be likely to have caused their admission to constitute a factor in the convicting of appellant we shall not consider. An appellate court will not presume to evaluate the degree of prejudice in probativeness from revelant evidence obtained by illegal search and seizure whether the relevance of such evidence be immediate or remote. And no more will it undertake to appraise the effect of any irrelevant evidence so obtained and used where such evidence, though not relevant to the offense charged, is nevertheless not utterly innocuous but can debatably be said to be possessed of some capacity to influence a jury.

A condoning of the use of any such evidence would of itself, against timely and proper protest made, amount to a deprivation of the immunity from unreasonable searches and seizures guaranteed by the Fourth Amendment. Cf. Weeks v. United States, 232 U.S.

383, 398, 34 S.Ct. 341, 58 L.Ed. 652. Constitutional guarantees of fundamental individual rights are entitled to whole-hearted judicial vindication, except where they have, by lack of timely and proper assertion or otherwise, been waived.

What we said in Garske v. United States, 8 Cir., 1 F.2d 620, 622, in relation to the admission of evidence obtained by the improper use of a search warrant, is equally applicable here— "The proposition is not open to argument that evidence obtained by an unconstitutional use of search warrants is not admissible, and convictions of crime so obtained must be reversed." In the language of Judge Learned Hand, "As we understand it, the reason for the exclusion of evidence competent as such, which has been unlawfully acquired, is that exclusion is the only practical way of enforcing the constitutional privilege. * * * Only in case the prosecution which itself controls the seizing officials, knows that it cannot profit by their wrong, will that wrong be repressed." United States v. Pugliese, 2 Cir., 153 F.2d 497, 499.

Reversed and remanded.