UNITED STATES of America, Appellee,

v.

Walter BRIDGES, Appellant.
No. 19624.

United States Court of Appeals Eighth Circuit.

Dec. 19, 1969.

Samuel Raban, St. Louis, Mo., for appellant and filed brief.

William C. Martin, Asst. U. S. Atty., St. Louis, Mo., for appellee Daniel Bartlett, Jr., U. S. Atty., was on the brief with Mr. Martin.

Before MEHAFFY, GIBSON and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

Walter Bridges was convicted under a two-count indictment: I, purchasing heroin other than in or from the origina stamped package in violation of 26 U.S.C.A. § 4704(a), and II, receiving and concealing heroin knowing that it had been imported into the United States contrary to law in violation of 21 U.S. C.A. § 174. He was sentenced under the first count to imprisonment for five years and, under the second count to imprisonment for fifteen years, the sentences to run concurrently.

Bridges contends on appeal that the trial court erred in failing to suppress and subsequently receiving into evidence approximately three ounces of heroin and other evidence seized by federal narcotics agents in search of his home. He argues: (1) that the affidavit submitted to the United States Commissioner as a basis for the warrant to search his home failed to show probable cause, (2) that the warrant authorized a search for heroin only, but that other items were improperly seized and subsequently erroneously received in evidence, and (3) that there was no showing that he had possession or control over the heroin

seized. We find no error in the trial court's rulings.

## (1) THE SUFFICIENCY OF THE AFFIDAVIT TO SHOW PROBABLE CAUSE.

On the evening of July 18, 1968, Richard Patch, an agent of the Bureau of Narcotics and Dangerous Drugs, searched a brick residence at 5400 Page, St. Louis, Missouri, pursuant to a search warrant obtained that day from a United States Commissioner. The sole basis for the issuance of the search warrant was an affidavit of the same date sworn to by Agent Patch. It stated:

"On July 17, 1968, in San Diego, California, Agents of the Bureau of Narcotics & Dangerous Drugs were told by a person who had previously on a number of occasions given them information which had proved to be reliable that Walter Bridges was in possession of 8 ounces of heroin; that Walter Bridges had concealed this quantity of heroin and was returning to St. Louis, Missouri, on said date. On July 18, 1968, I placed a telephone call to Walter Bridges in St. Louis at telephone #863–0043, listed to Bertha Bridges, 5400 Page, St. Louis, and determined that Walter Bridges was in the City of St. Louis. On July 18, 1968, I was informed that it was rumored that heroin would be available on the streets of St. Louis this afternoon because Bridges had returned from the west coast with a load of heroin. Walter Bridges was convicted on May 18, 1961, for narcotic violations and received a sentence of nine years. Walter Bridges has a record and reputation for sale of narcotics. Informants of this office have told me they have made purchases of heroin from Bridges and that he was obtaining his heroin on the west coast. I have also been informed that Walter Bridges sells large quantities of heroin every week and that his supply is kept in his home, which is at the above address. All of the above information has come from informants who have on numerous occasions given information to the affiant and other Agents of the Bureau of Narcotics & Dangerous Drugs which has proved reliable."

The defendant argues that Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723 (1964); and Rosencranz v. United States, 356 F.2d 310 (1st Cir. 1966), require that the affidavit be found insufficient. He urges that the affidavit (1) failed to establish the reliability of the informants, and (2) failed to set forth the underlying circumstances necessary to enable the Commissioner to judge the validity of the informants' statements to agents of the Bureau and, thus, the validity of Patch's conclusion that Bridges was keeping heroin in his home on July 18, 1968.

At the outset, we note that the information supplied to the California agents of the Bureau by a reliable informant that Bridges was in that state and that he had heroin in his possession, had concealed it and was returning with it to St. Louis could not be given weight by the Commissioner. No underlying circumstances were set forth in the affidavit which would enable the Commissioner to judge independently the truthfulness of the California informant's statements.[1]

---

1. We do not determine whether it should also be rejected on the grounds that Patch testified at the hearing to suppress that he could not testify as to whether the California informant was a reliable one. See, Rosencranz v. United States, 356 F.2d 310, 317 (1st Cir. 1966). We note, however, that Patch also testified that all of the facts stated in his application were true, and that one of these facts was that the California agents had informed Patch that the informant had given them information which proved to be reliable on a number of prior occasions. If the latter version of Patch's testimony is accepted, the reliability requirement would appear to be satisfied despite the fact that Patch did not speak personally with the California informant. See, United States v. Ven-

■ We reject the defendant's first contention. The affidavit specifically states that the information furnished to Patch came from informants who had, on numerous occasions, given information to him which had proved to be reliable. The statement sufficiently establishes the reliability of the informants.[2]

■■ We also reject the defendant's second contention. In our view, a fair reading of the affidavit supports the Commissioner's finding of probable cause. It can reasonably be read as stating that the informants, whose reliability was established and who made purchases of heroin from Bridges, informed Patch: that Bridges sells large quantities of heroin every week; that Bridges' supply of heroin for such sales is kept in his home; that Bridges was obtaining his supply of heroin from the West Coast; and, that he had just returned from California with a supply of heroin. It can also be read as stating that Patch knew that Bridges had a reputation for the sale of narcotics.[3]

If so read, the Commissioner would be justified in issuing the warrant. The elements found missing in *Spinelli* and in *Aguilar* would be satisfied as the information came from informants of es-tablished reliability who made purchases of heroin from Bridges and, thus, had personal knowledge of his activities. The time element found missing in Rosencranz v. United States, *supra,* would be satisfied by the allegations that Bridges' heroin sales were of a continuing nature, and that Bridges had returned from the West Coast with a supply of heroin on July 18, 1968.

■ We recognize that the affidavit can also be read as stating that the informants' purchases were not recent and that the informants, who told Patch that Bridges sells large quantities of heroin every week and that he obtains his supply on the West Coast, were not the informants who made the purchases. Read in this light, the Commissioner would be obliged to refuse the search warrant, or to make further inquiry before issuing it. This is true because, under such a reading, there would be no basis upon which the Commissioner could judge the validity of the informants' statements to Patch or the validity of Patch's conclusions. But, the Commissioner was satisfied with the affidavit and we cannot say that a common sense reading of it required a result other than that reached.[4] Spinelli v.

tresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); United States v. Simon, 409 F.2d 474 (7th Cir. 1969).

2. Spinelli v. United States, 393 U.S. 410, 425, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) (concurring opinion of Justice White); McCray v. Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); United States v. Kidd, 407 F.2d 1316 (6th Cir. 1969); United States v. Barnett, 407 F.2d 1114 (6th Cir. 1969); United States v. Rich, 407 F.2d 934 (5th Cir. 1969); McCreary v. Sigler, 406 F.2d 1264 (8th Cir. 1969).

3. Reputation, known to an affiant government agent, can serve to corroborate independent sources of information sufficient in themselves to establish probable cause. Jones v. United States, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960). But a simple assertion of police suspicion is not itself a sufficient basis for a Commissioner's finding of probable cause and cannot be used to give addi-tional weight to allegations that would *otherwise be insufficient.* Spinelli v. United States, *supra,* 393 U.S. at 418–419, 89 S.Ct. 584.

4. The defendant argues, for the first time on appeal, that Patch falsely swore that Bridges had been convicted in 1961 for "narcotics violations and received a sentence of nine years." The government concedes that the Missouri Supreme Court, following Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), reversed Bridges' state conviction for drug addiction in State v. Bridges, 360 S.W.2d 648 (Mo.1962). It does not concede that Patch's statement was a wilfully false one. Assuming, for the purposes of this decision, that a court may examine a warrant valid on its face to determine the truthfulness of a statement in an affidavit, see, Rugendorf v. United States, 376 U.S. 528, 531, 532, 84 S.Ct. 825, 11 L.Ed.2d 887 (1964), and further assuming that the issue is one which may be raised for the first

United States, *supra*, 393 U.S. at 419, 89 S.Ct. 584; United States v. Ventresca, 380 U.S. 102, 108–109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

## (2) SEIZURE OF ITEMS OTHER THAN HEROIN.

A needle, syringes, spoons, eyedroppers, lactose or milk sugar, quinine, gelatine caps, cellophane packages and other items characterized in testimony by government witnesses as narcotics paraphernalia were seized during the search and introduced into evidence over the defendant's objections. United States Savings Bonds, a bank book and a safety deposit box key were also seized during the search but were not offered into evidence.

The defendant contends that since the warrant stated that the property being concealed in the defendant's house was heroin, the seizure of all other items was unauthorized and unconstitutional as a general search. This argument is not well taken.

■ Under the exclusionary rule, objections to items seized in a search may be made only if the items are offered into evidence at the trial. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L. Ed.2d 1081, 84 A.L.R.2d 933 (1961); Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960); Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). Since the savings bonds, bank book and safety deposit box key were not offered into evidence, the question of their admissibility is not before us.

■ The items characterized as narcotics paraphernalia were properly seized and received into evidence. It is well established that " * * * instrumentalities and means by which a crime is committed" are among the classes of items which may be seized under the authority of a search warrant although their presence was not specified in the warrant. Harris v. United States, 331 U.S. 145, 154, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947). Narcotics paraphernalia is within this class. Bryant v. United States, 252 F.2d 746 (5th Cir. 1958).

The defendant cites Honig v. United States, 208 F.2d 916 (8th Cir. 1953), and a number of other cases [5] in support of his argument that the items seized should be excluded as evidence. *Honig* is the only case which is relevant to the narrow question presented here, and it is distinguishable.

*Honig* involved a prosecution for impersonation. Three items were seized and offered into evidence: a false identification card, a rubber stamp and blank stock certificates. The admissibilty of the identification card was upheld as the product of a consensual search. The last two items were seized pursuant to a lawful arrest. The Court correctly held that the items seized were admissible if they were means or instrumentalities by which a crime is committed. The Court held that the rubber stamp fell in that category, but that the blank stock certif-

time on appeal, but see, United States v. Smith, 393 F.2d 687 (6th Cir.), cert. denied 393 U.S. 885, 89 S.Ct. 197, 21 L.Ed.2d 162 (1968); United States v. Bowling, 351 F.2d 236 (6th Cir. 1965), cert. denied, 383 U.S. 908, 86 S.Ct. 888, 15 L.Ed.2d 663 (1966), we hold that the untrue statement is not sufficient grounds for reversal. While the record is silent as to why an experienced agent of the Bureau of Narcotics would be in error, there is no showing in the record that Patch made the statement with fraudulent intent. It is also highly unlikely that the Commissioner would give any weight to a 1961 conviction for addiction in determining probable cause for the issuance of a search warrant in 1968. We, therefore, view the allegation as being an immaterial one. Compare, King v. United States, 282 F.2d 398 (4th Cir. 1960); United States v. Pearce, 275 F.2d 318 (7th Cir. 1960).

5. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065 (1967); Jones v. United States, *supra*; Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958); Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927); Gillespie v. United States, 368 F.2d 1 (8th Cir. 1966); Garske v. United States, 1 F.2d 620 (8th Cir. 1924).

icates were not shown to be in any manner connected with the alleged crime of impersonation and, therefore, as *mere evidence*, were inadmissible under Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921). *Gouled*, however, was apparently overruled in Warden, Md. Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967).

### (3) POSSESSION OF THE HEROIN SEIZED.

The defendant argues that there was no showing that he had possession or control over the narcotics. He urges that he was not present in the house when the search was conducted and that there was no evidence to establish that he ever had the heroin in his own possession.

This argument is not supported in law or fact. The law is clear that possession may be established by direct or circumstantial evidence and that constructive as well as physical or actual possession suffices. Mack v. United States, 326 F.2d 481 (8th Cir.), cert. denied, 377 U.S. 947, 84 S.Ct. 1355, 12 L.Ed.2d 309 (1964).

It is admitted here that the residence searched was occupied by the defendant and his family. The government produced evidence that narcotics were found in a drawer in the bedroom which he shared with his wife. From these circumstances, the jury could find possession in the defendant. Evans v. United States, 257 F.2d 121 (9th Cir.), cert. denied, 358 U.S. 866, 79 S.Ct. 98, 3 L.Ed. 2d 99 (1958).

There is also evidence from which the jury could find that the defendant was present when the agents arrived and that he threw down a package of heroin. On appeal, we are required to accept the findings of the jury if those findings are supported by evidence in the record. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); Mack v. United States, *supra*.

Government witnesses testified that the defendant answered the agents'

knock at the door, recognized the agents and threw a package on the floor as he hurried up the stairs. The package was later determined to contain heroin. The defendant's wife strongly denied that the defendant was home at any time during the search, and her testimony was supported, in part, by the fact that the agents could not later find the defendant on the premises. From all of this evidence, however, the jury could conclude that the defendant had possession of the heroin. United States v. Chiarelli, 192 F.2d 528 (7th Cir. 1951), cert. denied, 342 U.S. 913, 72 S.Ct. 359, 96 L.Ed. 683 (1952).

The decision of the trial court is affirmed.