**In re Bernard BERNSTEIN, a Witness before Federal Grand Jury.**

**No. GJ75–4(MIA).**

United States District Court, S. D. Florida.

Jan. 3, 1977.

Jamie L. Whitten, Asst. U. S. Atty., Miami, Fla., for plaintiffs.

E. David Rosen, Miami, Fla., for defendant.

## ORDER DENYING MOTION TO COMPEL PRODUCTION OF SUBPOENAED TAPE RECORDINGS

ARONOVITZ, District Judge.

THE UNITED STATES OF AMERICA moved to compel the production of subpoenaed tape recordings by Bernard Bernstein, a witness before the Federal Grand Jury. By subpoena the witness had been directed to appear before the Grand Jury and to produce certain tape recordings made in Miami, Florida of admittedly self-incriminating telephone conversations between himself as Regional Vice President of a nationally oriented corporation and four of its officers in New York, all of which Bernstein had personally taped and retained in his exclusive possession. The witness refused to turn over said tape recordings to the Grand Jury based upon his assertion of the protection of the Fifth Amendment to the Constitution of the United States.

This Court held an evidentiary hearing on the Government's motion at which counsel for both Bernstein and the Government were present. A witness who had been present when the telephone conversations were recorded testified at said hearing, and he substantially corroborated the substance of the Government's motion to compel, that is, that the tapes existed, that they were made by Bernstein, the events of recording same, and that Bernstein initially took, and retained, possession of the tapes.

The Government argues that the subpoena does not compel the witness to give oral testimony, nor is the witness compelled to restate, repeat, or affirm the truth of the contents of the documents sought; and consequently the witness is not being compelled to be a witness against himself, citing *Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). The Government further argues that the taped recorded conversations sought in this matter were wholly voluntary when made, and thus the tapes do not contain elements of compelled testimonial evidence. The Government further contends, based upon *Fisher,* that however incriminating the contents of the tape recordings are, the act of producing them—the only thing which the witness is compelled to do here—would not itself involve testimonial self-incrimination.

But *Fisher* is distinguishable from the case sub judice because it held that a taxpayer's attorney could be required to produce by subpoena workpapers prepared by his client's accountant and in the possession of the *attorney,* since such documents were not prepared by the taxpayer, and the taxpayer is not compelled to do anything through the summons served upon his attorney. Therefore, the Fifth Amendment is not violated solely by the fact that the papers on their face might incriminate the taxpayer, who had not prepared them, and which documents contained no testimonial declarations by him.

As the Court stated,

"Our above holding is that compelled production of documents *from an attorney* does not implicate whatever Fifth Amendment privilege the taxpayer might

have enjoyed from being himself compelled to produce them" (Emphasis added) 96 S.Ct. at 1576.

\* \* \* \* \* \*

"Whether the Fifth Amendment would shield the taxpayer from producing his own tax records in his possession is a question not involved here; . . ." 96 S.Ct. at 1582.

The Supreme Court thus observed and recognized that the taxpayer (or, as applied here, the witness Bernstein) might himself enjoy the privilege of not being compelled to produce documents. Adverting to *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), the Court also noted that the Fifth Amendment does indeed prevent compelled production of self-incriminating documents. Private papers taken from the taxpayer, like other "mere evidence" cannot be used against the accused over his Fourth and Fifth Amendment objections. *Gouled v. United States*, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921).

Moreover, the Supreme Court in *Fisher* (at footnote 12) recognized and reaffirmed the "Implicit authentication" rationale as the prevailing justification of the application of the Fifth Amendment to documentary subpoenas, although this doctrine was not applicable therein because the papers could be authenticated by the accountant or by parties other than the taxpayer. Therefore, the taxpayer did not have to vouch for genuineness, which would have constituted testimonial compulsion.

In *Andresen v. State of Maryland*, 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976) the Supreme Court stated:

"Thus, although the Fifth Amendment *may* protect an individual from complying with a subpoena for the production of his personal records in his possession because the very act of production may constitute a compulsory authentication of incriminating information, see *Fisher v. United States*, supra, . . ."

Therefore, *Andresen* reaffirmed the holding in *Fisher*. Additionally, *Andresen* is distinguishable from the case sub judice because it involved a seizure of the materials by law enforcement officials under a search warrant, not production under compulsion of subpoena.

Here, Bernstein urges that he and he alone can authenticate the genuineness of the subject tape recordings because he made them and they have been in his exclusive possession since they were made. He further argues through counsel that the Grand Jury cannot compel the production of a person's private books and records which might incriminate him—that here this principle applies to his tapes.

After careful consideration of the issues presented herein, the Court finds that the privilege of the Fifth Amendment may be invoked to protect one's own tapes which are in one's own possession and which are self-incriminatory. The guarantee does not apply without this tripartite unity over ownership, possession and self-incrimination. See *United States v. Falley*, 489 F.2d 33 (2d Cir. 1973). Further, the issue of compulsory testimony through self-authentication by compelling the witness to produce the tapes is also present here and thus the witness is entitled to the privilege and protection of the Fifth Amendment. See *Boyd*, supra; *Fisher*, supra; *Gouled*, supra.

To accept the Government's arguments to the contrary would strain the protection afforded by the Fifth Amendment beyond that reasonable point for which it was initially conceived in the Bill of Rights nearly two hundred years ago.

It is thereupon—

ORDERED AND ADJUDGED that the Motion by the United States of America to Compel Production of Subpoenaed Tape Recordings by the Witness Bernard Bernstein be and the same is hereby DENIED.