THE STATE OF MONTANA, PLAINTIFF AND RESPONDENT, *v.* WAYNE LEIGHTY, DEFENDANT AND APPELLANT.

No. 14148.
Submitted Sept. 15, 1978.
Decided Dec. 28, 1978.
588 P.2d 526.

H. James Oleson (argued), Kalispell, for defendant and appellant.

Mike Greely, Atty. Gen., Allen B. Chronister, Asst. Atty. Gen. (argued), Helena, William A. Douglas, County Atty., Shaun R. Thompson, Deputy County Atty. (argued), Libby, for plaintiff and respondent.

MR. JUSTICE HARRISON delivered the opinion of the Court.

On June 14, 1977, defendant Wayne Leighty pled guilty in justice court to the misdemeanor offense of "outfitting without a license". He appealed to District Court and on October 17, 1977, a

jury trial commenced in the District Court of the Nineteenth Judicial District, the Honorable Robert M. Holter presiding. The jury returned a verdict of guilty and defendant was fined $300. He appeals.

Prior to May 2, 1977, defendant was an outfitter, licensed under the laws of Montana, doing business near Eureka, Montana. On April 28, 1977, the Montana State Fish and Game Commission suspended defendant's right to hold an outfitter's license for three years effective May 2, 1977. In May of that year, defendant indicated in a conversation with a Fish and Game official, that he intended to continue outfitting notwithstanding the suspension. Another Fish and Game official then contacted Timothy J. Kelly of Springfield, Ohio, and asked him to act as an "undercover agent" in a scheme to test defendant's intention. Mr. Kelly telephoned defendant to make arrangements to hunt bear and then traveled to Montana.

Before visiting defendant, Mr. Kelly was outfitted with a bugging device so that local law enforcement officials could listen to and record Mr. Kelly's conversation with defendant. After Mr. Kelly had paid defendant, defendant took him on a brief bear hunt. Defendant was subsequently arrested and charged with "outfitting without a license" in violation of section 26-914, R.C.M.1947.

Defendant raises several issues for review which can be summarized and stated as follows:

1. Whether consideration of section 94-8-114(1)(c), R.C.M. 1947, is appropriate in this case.

2. Whether evidence obtained by a witness in conversations with defendant should have been excluded for failure to obtain a search warrant where the witness was acting as an agent for law enforcement officials.

3. Whether the District Court erred in admitting evidence that defendant's outfitting license had been revoked.

4. Whether conduct on the part of witnesses for the State was prejudicial and prevented defendant from receiving a fair trial.

■ Defendant raises a number of issues with respect to the constitutionality of section 94-8-114(1)(c), R.C.M.1947, arguing that it purports to authorize warrantless electronic eavesdropping by state officials. The record in this case does not reveal that any state official attempted to rely on this statute as authority for eavesdropping without a warrant. Such reliance would be misplaced because the statute, as this Court stated in *State v. Brackman* (1978), 178 Mont. 105, 582 P.2d 1216, 1222, merely "defines what constitutes the *offense* of violating privacy in communications." As part of the statute, duly elected or appointed public officials or employees are excused from criminal sanctions when recording is done in the performance of an official duty. Section 94-8-114(1)(c) neither addresses nor modifies any *constitutional* requirements relating to search and seizure. Moreover, the recordings obtained by the state officials in this case were not introduced into evidence at defendant's trial. Consequently, there is no reason for this Court to review the circumstances surrounding their acquisition or their possible inadmissibility as evidence. "This Court does not decide academic, theoretical or moot questions." *State v. Thompson* (1978), 176 Mont. 150, 576 P.2d 1105, 1107.

■ Defendant goes on, however, to argue that all evidence obtained by Mr. Kelly while at defendant's house, including evidence of oral statements made by defendant, should have been excluded by the trial court because it was acquired without first obtaining a search warrant. Before addressing this allegation of error, it is significant to point out that the only witness at trial who testified about Mr. Kelly's observations of or conversations with defendant was Mr. Kelly. No one who might have listened to Mr. Kelly's conversations with defendant by means of the bugging device testified as to the content of the conversations. Consequently, defendant is arguing that law enforcement officials must first obtain judicial sanction, i. e., a search warrant, before they can use an "undercover agent" to gather evidence of possible improper conduct through observation or conversation. A brief review of pertinent decisions of the United States Supreme Court clearly reveals that this is not the law.

Defendant argues that *Gouled v. United States* (1921), 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647, prohibits an agent, such as the one utilized in this case, from conducting a search for incriminating materials even though he may have entered a suspect's home by invitation. In *Gouled*, however, the agent gained admission to the defendant's office under the pretense of a friendly visit and then, in the defendant's absence, conducted a general search of the premises. As the Supreme Court pointed out in *Lewis v. United States* (1966), 385 U.S. 206, 210, 87 S.Ct. 424, 427, 17 L.Ed.2d 312, 315, the Fourth Amendment had been violated in *Gouled* by the "secret and general ransacking" of the office.

The factual circumstances complained of in *Lewis* are similar to those in the case at bar and were clearly distinguished by the Supreme Court from the situation presented in *Gouled*. In *Lewis* the defendant invited the government's undercover agent into his home to complete an illegal narcotics sale.

"During neither of his visits to petitioner's home did the agent see, hear, or take anything that was not contemplated, and in fact intended, by petitioner as a necessary part of his illegal business.

". . .

"A government agent, in the same manner as a private person, may accept an invitation to do business and may enter upon the premises for the very purposes contemplated by the occupant." *Lewis*, 385 U.S. at 210-11, 87 S.Ct. at 427, 17 L.Ed.2d at 316.

This is exactly what happened in the instant case. Defendant's dealings with Mr. Kelly were business dealings. Defendant did not attempt to shroud them with a veil of secrecy. He engaged in the business of outfitting with full knowledge that he was prohibited by law from doing so because he did not have a license from the State of Montana. Mr. Kelly did not learn anything from defendant or see anything in defendant's home which defendant reasonably expected would remain private. He did not ransack defendant's belongings or eavesdrop on defendant's private conversations. What defendant revealed to Mr. Kelly was revealed knowingly and voluntarily.

In *Hoffa v. United States* (1966), 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374, the petitioner argued that a government informer's "failure to disclose his role . . . vitiated the consent that the petitioner gave to [his] repeated entries into [petitioner's] suite, and that by listening to the petitioner's statements [the informer] conducted an illegal 'search' for verbal evidence." *Hoffa*, 385 U.S. at 300, 87 S.Ct. at 413, 17 L.Ed.2d at 381. The Supreme Court responded by stating that "[n]either this Court nor any member of it has ever expressed the view that the Fourth Amendment protects a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." *Hoffa*, 385 U.S. at 302, 87 S.Ct. at 413, 17 L.Ed.2d at 382. In line with these views we hold that no right protected by the Fourth Amendment or by the 1972 Mont. Const., Art. II, § 11 was violated in the present case.

■  The next issue presented for our consideration concerns the District Court's admission of evidence that defendant's outfitting license had been revoked by the Montana State Fish and Game Commission. This evidence consisted of copies of the Commission's order, its findings of fact and conclusions of law, and the notice that the documents had been served on defendant.

Defendant argues that admitting evidence that he had broken other laws was prejudicial and influenced the jury to the extent that he was denied a fair trial. Defendant contends these documents were evidence of collateral facts too remote from the principal fact in issue to be relevant. During oral argument, counsel for defendant argued that defendant would have stipulated to the fact that he was not a licensed outfitter at the time of the alleged infraction.

The State relies on Rule 404(b), Mont.R.Evid., to support the introduction of this evidence:

"(b) Other crimes, wrongs, acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. *It may, however, be admissible for other purposes, such as proof of* motive,

opportunity, intent, preparation, plan, *knowledge*, identity, or *absence of mistake or accident."* (Emphasis added.)

By introducing this evidence, the State was proving an element of the crime charged, that defendant did not have an outfitting license at the time he dealt with Mr. Kelly.

Prior to May, 1977, defendant was well known within his community as an outfitter. In all probability, one or more members of the jury had seen the large sign in front of defendant's property advertising that fact. The sign had not been removed when defendant's license was revoked and was still in place at the time of trial. By introducing evidence that defendant's outfitting license had been revoked, the State proved in the most straight forward and least confusing way possible that defendant did not have a license to outfit when his dealings with Mr. Kelly commenced. In addition, these documents prevented the jury from drawing any possibly prejudicial and unjustified inferences with respect to defendant's not having a license. Most importantly, however, this evidence tended to prove "knowledge" on the part of defendant that he was acting outside the scope of the law and that his actions were not the result of some innocent "mistake or accident" on his part. As a result, we hold that evidence of the revocation of defendant's outfitting license was admissible under the facts of this case by virtue of Rule 404(b), Mont.R.Evid.

■ Finally defendant argues that three witnesses for the State, all state officials, testified in such a manner as to prejudice defendant's cause before the jury.

The first testimony which defendant cites as objectionable was that of a Fish and Game official when he was asked about placing a bugging device on Mr. Kelly. He responded by asserting that the purpose of placing such a device on Mr. Kelly was for his protection should he be discovered. Defendant objects to this testimony because it implies that the state officials had reason to believe that defendant was a dangerous individual. However, when further questioned on this point by counsel for defendant, the Fish and

Game official admitted that he had no reason to believe defendant might be dangerous:

"Q. What you are testifying to then is that really there was not a risk as far as Mr. Kelly was concerned in this, other than normal, in this situation? A. Again, I state there's always a chance, but I had no direct knowledge or information that Mr. Leighty was dangerous or anything such as this.

"Q. That is what I am trying to get at here. You do not mean to mislead the jury into thinking that Mr. Leighty is dangerous? A. No, I don't."

One purpose of cross-examination is to further develop testimony offered under direct examination where that testimony would otherwise be misleading. Within the context of the entire transcript, it appears that any possible prejudicial effect of testimony by this witness was effectively negated by the further development of the testimony on cross-examination.

■ Likewise, the testimony of a second Fish and Game official, that other outfitters had complained to him of defendant's continued outfitting in spite of the suspension of his license, was not prejudicial. In this case, the testimony defendant complains of was elicited, in its entirety, on cross-examination. In an apparent attempt to impeach the credibility of this witness for the State, counsel for defendant first elicited general answers and then continued his examination in such a manner as to make it appear the witness was equivocating. The credibility of the second Fish and Game official was properly a matter for the jury's determination. We do not find his testimony prejudicial.

■ The final testimony which defendant cites as prejudicial is that of a deputy sheriff who had overheard the conversations of defendant and Mr. Kelly by virtue of the bugging device. While he did not testify with respect to the contents of any conversation, he did mention that he recognized the three voices as those of Mr. Kelly, defendant and defendant's wife. On cross-examination, he admitted that he only assumed the voices he heard were the voices of Kelly, defendant, and defendant's wife. Defendant must assume

that the prejudicial effect of such testimony is obvious because he does not elaborate on its effect beyond simply quoting these passages within the context of the entire transcript, we fail to discern the prejudicial impact asserted by defendant.

The judgment of the District Court is affirmed.

MR. CHIEF JUSTICE HASWELL and JUSTICES DALY and SHEEHY concur.