FILED

January 27 2015

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 13-0720

DA 13-0720

IN THE SUPREME COURT OF THE STATE OF MONTANA

2015 MT 25N

STATE OF MONTANA,

        Plaintiff and Appellee,

   v.

ROGER INDRELAND,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC 11-76
Honorable Edward P. McLean, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

          Jack H. Morris, Morris Law Firm, PLLC, Helena, Montana

       For Appellee:

          Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

          Kirsten H. Pabst, Missoula County Attorney, Jessica Finley, Deputy
County Attorney, Missoula, Montana

Submitted on Briefs:  January 7, 2015
Decided:  January 27, 2015

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     Roger Indreland appeals from his October 2013 convictions for outfitting without a license, accountability for hunting from a vehicle, and unlawful possession of a game animal, all misdemeanors. We affirm.

¶3     We restate the issues on appeal as follows:

¶4     Issue One: Whether the District Court erred in denying Indreland's motion to suppress.

¶5     Issue Two: Whether the District Court erred by allowing the jury to take admitted audio recordings into the jury room during deliberations.

¶6     In 2008 Indreland ran advertisements in the *Missoulian* newspaper soliciting the public to hunt big game animals on his ranch. An undercover investigator for the Montana Department of Fish, Wildlife and Parks called Indreland at the number in the advertisement and discussed hunting opportunities. Based upon the information that Indreland provided during the telephone call, another DFWP undercover investigator contacted Indreland in November 2008 and booked a big game hunt. After the hunt the investigator reported that Indreland had engaged in several unlawful hunting activities.

The DFWP used that information to obtain a search warrant authorizing electronic monitoring and recording of future conversations between Indreland and undercover agents.

¶7   In 2009 two other DFWP undercover investigators booked hunts with Indreland and recorded conversations with him pursuant to the warrant. In March 2010 DFWP obtained a warrant to search Indreland's property, based upon information gathered during the 2008 and 2009 hunts. Thereafter the State charged Indreland with several offenses, and he was convicted in Missoula County Justice Court. He appealed to District Court, and after a jury trial he was convicted a second time. He appeals from those convictions.

¶8   As to Issue One, Indreland moved to suppress the all evidence gathered on his ranch, contending that the investigators entered his private property under the false pretense that they were members of the public who wanted to hunt. The District Court denied Indreland's motion to suppress, determining that Indreland willingly exposed his ranch and his hunting activities there to the public. He ran advertisements in the newspaper inviting members of the public to pay him money to hunt on his ranch. He allowed the undercover officers onto his ranch and conducted unlawful activities in their presence.

¶9   The District Court correctly concluded that Indreland had no reasonably objective expectation of privacy in his public hunting activities on his ranch. *State v. Goetz*, 2008 MT 296, ¶ 16, 345 Mont. 421, 191 P.3d 489; *State v. Boyer*, 2002 MT 33, ¶ 26, 308 Mont. 276, 42 P.3d 771. Therefore, the State did not violate Indreland's constitutional

3

rights to privacy or to freedom from unreasonable searches by responding to his public advertisements and hunting with him on his ranch. Law enforcement officers are not required to know that a person has committed a crime before conducting an investigation, *Boyer*, ¶ 23, and courts recognize the need for covert investigations. *State v. Leighty*, 179 Mont. 366, 588 P.2d 526 (1978); *State v. Fitzpatrick*, 2012 MT 300, ¶¶ 14-26, 367 Mont. 385, 291 P.3d 1106. Indreland cannot rely upon his own "misplaced confidence" that persons like the undercover agents whom he invited to be in his presence would not reveal what happened. *Hoffa v. U.S.*, 385 U.S. 293, 302, 87 S. Ct. 408, 413 (1966).

¶10 As to the second issue, the District Court admitted without objection the sound recordings of the discussions between Indreland and the undercover officers. The recordings were extensive, spanning about 18 hours. The recordings were not transcribed and only short excerpts were played during trial. After closing argument, the District Court sustained Indreland's objection and did not allow the jury to take the audio recordings with them into deliberation. During deliberation, however, the jury requested the audio recordings, and the District Court provided them.

¶11 Indreland contends that the audio recordings were testimonial evidence and should not have been provided to the jury during deliberations. The jury may take into its deliberations "all exhibits that have been received as evidence in the cause that in the opinion of the court will be necessary." Section 46-16-504, MCA. If the jury requests additional information during deliberations, that information "may be given, in the discretion of the court, after consultation with the parties." Section 46-16-503(2), MCA. These statutes do no abrogate the common law rule cautioning against providing the jury

4

with "testimonial materials" for their unrestricted review during deliberation. *State v. Bales*, 1999 MT 334, ¶ 19, 297 Mont. 402, 994 P.2d 17 (audio recording of officer's interview of the defendant was testimonial evidence, but providing it to the jury did not unduly emphasize the testimony to the exclusion of other testimony). The recognized danger is that providing testimonial material carries the danger of placing undue emphasis on the testimony of one witness to the exclusion of other testimony. *Bales*, ¶ 20. A district court's decision to provide evidence to the jury during deliberations is reviewed for an abuse of discretion. *State v. Stout*, 2010 MT 137, ¶ 26, 356 Mont. 468, 237 P.3d 37.

¶12 While some materials can be considered testimonial, such as transcribed witness testimony or a recorded interview, in other situations the line between testimonial and non-testimonial material is not bright. *Stout*, ¶¶ 30-31. In this case, we determine that the tape recordings made during the undercover hunts were not testimonial, but rather were contemporaneous substantive evidence of Indreland's presence at and involvement in unlawful activity. Allowing the jury access to admitted recordings of undercover transactions is consistent with the law in other states. *State v. Castellanos*, 132 Wn.2d 94, 100, 935 P.2d 1353, 1356-1357 (Wash. 1997).

¶13 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for memorandum opinions. The issues in this case are matters of judicial discretion and there clearly was not an abuse of discretion.

¶14 Affirmed.

5

/S/ MIKE McGRATH

We Concur:

/S/ PATRICIA COTTER
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ LAURIE McKINNON